[Crim. No. 7354.   Second Dist., Div. Three.   Jan. 16, 1961.]

THE PEOPLE, Respondent, v. ADOLPHO MARTINEZ HERNANDEZ, Appellant.

Barbara Warner, Warner, Sutton & Warner and Caryl Warner for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

SHINN, P. J.—In a jury trial defendant was convicted of the possession of heroin. His motion for new trial was denied and he appeals from the judgment and the order.

At the commencement of the taking of testimony, upon being informed of the defendant's contention that he was illegally arrested and searched, the court ruled that evidence with respect to the regularity of the arrest and seizure would be heard by the court outside the presence of the jury.

Over objection of the defendant the court took evidence upon the issue of probable cause. There was evidence of the following facts. Defendant was arrested in a district in East Los Angeles inhabited by many of Mexican-American descent; Deputy Sheriff O'Neill of the Sheriff's Narcotics Detail had visited the area several hundred times and had made in excess of 30 narcotics arrests there in the two months' period prior to the arrest of defendant. On the day in question, O'Neill, accompanied by Deputies Velasquez, Sells and Thornberg, all of the narcotics detail, were making an investigation in the area. Defendant was in the rear of a building when O'Neill first observed him. He was seated on a cement box near one corner of a building and was alone at the time. O'Neill and Velasquez approached defendant, who turned his body, faced the officers and arose from the cement box; he took two or three steps and fell with his left shoulder against a wall of the building and took two or three more steps, when he sat down again, and then arose. O'Neill noticed that his pupils were dilated. Defendant spoke to the officers but had difficulty with his pronunciation. He took long pauses before answering questions and his speech was slurred; he was being assisted to stand up by Officer Velasquez. He was arrested "for being under the influence of a dangerous drug."

Officer O'Neill was questioned whether he formed an opinion whether defendant was under the influence of "anything" and upon inquiry into his qualifications on *voir dire,* it was developed that he had had considerable experience in the field of narcotics, including 20 hours of formal schooling with the narcotics detail, a course of instruction by a qualified officer on narcotics addiction, 16 hours of formal instruction in a junior college, training in the sheriff's training academy and detective training courses. He had read publications of the Federal Bureau of Narcotics and the state and county narcotics details. He had lived for two months with narcotics addicts and had been present when narcotics were used. An objection was made on the ground of the lack of qualifications of the witness and was overruled. The ruling was correct.

■■ In ruling upon the qualifications of a witness who is called to give expert testimony, the court enjoys a broad discretion. (19 Cal.Jur.2d, § 296, p. 23.) ■■ In the two months the officer had lived with narcotics addicts he had an unusually good opportunity to observe the objective manifestations of the use of narcotics and by his training and experience was shown to be sufficiently qualified. (See *People* v. *Mack,* 169 Cal.App.2d 825 [338 P.2d 25].)

Officer O'Neill testified that he formed the opinion that defendant was under the influence of a dangerous drug. While defendant was being assisted in standing he made a motion toward his shirt pocket but was restrained from reaching into the pocket. From defendant's shirt pocket Deputy Velasquez retrieved a finger stall which contained 17 capsules. From defendant's pants pocket the officers took capsules containing a narcotic known as seconal. Upon examination of five of the capsules, taken from defendant's shirt pocket, they were found to contain heroin. Defendant was arrested "for narcotics" and as soon as the finger stall was recovered, was told he was under arrest for possession of narcotics. Defendant was asked by O'Neill if the finger stall and contents were his and defendant replied that he wasn't going to take a fall for it and that Velasquez had planted it on him. There was evidence that in a later conversation with the officers defendant told them that he knew he had heroin in his possession, he was not selling heroin, he was merely holding it for a friend who had gone across the street.

There was also evidence that the officers had received information over a period of two or three months that narcotics were being dispensed and sold from a saloon across the street from the building where defendant was apprehended and their experience had been that users of narcotics had been found behind that building. The objection of defendant that the arrest and search were illegal was overruled and the narcotics were received in evidence.

Defendant testified to the same explanation he had given the officers but denied that he had admitted knowledge of what was in the package. On the day of the arrest he and his friend had been drinking whiskey, wine and beer (separately) since about 8 o'clock in the morning. He was feeling good, but only a little bit intoxicated. He admitted that the officers took the rubber container from his pocket; he did not know what was in it; he did not know the man who gave the package to him and could not recall his name; he stated that when he first arose after the appearance of the officers he almost fell down because one leg had gone to sleep.

The next contention of defendant to be considered is that there was no probable cause for the arrest or search. We must disagree.

Since it is a misdemeanor to be addicted to the use of a narcotic (Health & Saf. Code, § 11721) and the offense is a continuing one (*People* v. *Jaurequi,* 142 Cal.App.2d 555 [298

P.2d 896]), the arrest of defendant was lawful if the officers had reasonable cause for believing him to be under the influence of a narcotic.

The information the officers had that narcotics were being dispensed at a bar across the street from the building, the knowledge they had that addicts were accustomed to administer narcotics to themselves behind the building, where defendant was found, the dilated condition of the eyes of defendant, his loss of balance, his slurred speech and his furtive movement toward his shirt pocket furnished sufficient evidence that he was under the influence of a narcotic to justify his arrest as an addict. (*People* v. *Holland,* 148 Cal.App.2d 933 [307 P.2d 703].)

The discovery of narcotics in defendant's shirt pocket and pants pocket was in the course of a legal search, incidental to the arrest. (*People* v. *Guy,* 145 Cal.App.2d 481 [302 P.2d 657].)

The next contention is that the court erred in refusing to submit to the jury the question of probable cause for the arrest, and determined the issue itself as a matter of law. Defendant concedes that the precise point was decided adversely to his contention in *People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469], but insists that the case is not good law since the decision of the Supreme Court in *Elkins* v. *United States,* 364 U.S. 206 [80 S.Ct. 1437, 1453, 4 L.Ed.2d 1669, 1688]. The Elkins opinion did not involve the point. The Gorg case is good law.

In the trial of the issue of the existence of probable cause the People produced no evidence of any information which the officers made use of in the apprehension and arrest of defendant. On cross-examination Officer O'Neill testified that he had received through his superiors and from persons he had arrested information that at the Mednik Café or saloon across the street from the building where defendant was located narcotics were being sold. Defendant demanded the names of any persons who had given the officer information about the district; an objection by the People was sustained and the ruling is assigned as error. The arrest was based exclusively upon observations which the officers made at the time. The People did not rely upon any other evidence in proving probable cause. There was no error in overruling the objection. (*People* v. *Williams,* 51 Cal.2d 355 [333 P.2d 19].)

The next contention is that the instructions which the court gave on circumstantial evidence were insufficient and

that it was error to refuse two of defendant's requested instructions. The point is not well taken. The court gave the jury a definition of the offense of the possession of narcotics and in connection therewith gave the following instruction: ''Within the meaning of the law, a person is in possession of a narcotic when he knowingly has the narcotic under his dominion and control, and, to his knowledge, it either is carried on his person or is in his presence and custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible, and exclusive to him.'' The court also instructed that the word ''knowingly'' imports a knowledge of the existence of the facts but does not import a knowledge of their unlawfulness. The court also instructed that an act committed under ignorance or mistake of fact which disproves any criminal intent is not a crime and also instructed that before a finding of guilty could be based solely on circumstantial evidence each essential fact must be proved beyond a reasonable doubt and also that the facts found would have to be irreconcilable with any other rational conclusion. The effect of defendant's requested instructions was merely to direct the jury's attention to defendant's explanation that he was holding the capsules for safekeeping and did not know they contained heroin. The instructions that were given were sufficient and it was not error to refuse those requested by defendant.

Another point is that when defense counsel stated in his argument ''But it is our position that circumstantial evidence to meet the legal requirement is that, one, that the circumstances would be consistent with the guilt and they must be inconsistent with every reasonable hypothesis of innocence,'' the court interrupted stating ''I don't think it is a correct statement of law as you gave it.'' Counsel's statement of the law was, of course, a correct one. The incident is of slight importance, but it does point out a grievous deficiency in the archaic practice (Pen. Code, § 1093) of withholding from the jury instructions in the law until the arguments of counsel have been concluded, a practice that probably originated in times when jurors were told what verdicts they were to return, on penalty of being cast into jail if they disobeyed. All trial lawyers know that if in the course of argument they find it necessary to mention principles of law which they anticipate will be contained in the court's instructions, they are invariably interrupted either by opposing counsel or the court, usually with an admonition by the court to the effect that the court will state the law and that counsel must refrain from

anticipating what the instructions will be. Also, how often have we heard juries instructed that in determining the credibility of the witnesses they should scrutinize their manner while on the stand, the character of their testimony, their motives, their relation to the case, if any, and their degree of intelligence, when the key witnesses who have testified to material and uncontroverted facts had given their testimony perhaps several weeks before the court got around to instructing as to matters the jurors should have had in mind while the witnesses were on the stand. (Code Civ. Proc., § 1847.) It may be pertinent to ask how long it will be before this absurd practice is discontinued and the order of instruction and argument is reversed. (See article by Judge Prettyman, American Bar Association Journal, vol. 46, no. 10, p. 1066.)

The judgment and order denying motion for new trial are affirmed.

Vallée, J., and Ford, J., concurred.

A petition for a rehearing was denied February 14, 1961, and appellant's petition for a hearing by the Supreme Court was denied March 15, 1961.