[Crim. No. 3751. First Dist., Div. One. Apr. 17, 1961.]

THE PEOPLE, Respondent, v. EARL J. BRINSON, Appellant.

(Consolidated Cases.)

Clarence J. Ferrari, Jr., under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Respondent.

DUNIWAY, J.—Defendant appeals from the judgment and from orders denying his motions for new trial. He was convicted under an information charging unlawful possession of a narcotic, heroin, and an indictment charging an offer to sell, furnish and give away a narcotic, heroin (Health & Saf. Code, § 11500). The matters were consolidated for trial. His appeal is ably presented by court appointed counsel.

It is not claimed that the evidence does not support the judgment, and our examination of the transcript convinces us that the evidence of guilt, as to both charges, is more than sufficient. As to the charge of possession, it is claimed (1) that the manner in which the principal item of evidence, the bindle of heroin, was obtained violated appellant's rights under the Fourteenth Amendment to the United States Constitution and under the Constitution of California, article I, section 13; (2) that he was also deprived of due process of law in violation of the same constitutional guarantees in that his right to compulsory process for the attendance of a witness (Cal. Const., art. I, § 13) was denied; (3) that his arrest and the seizure of the narcotic was not based upon reasonable or probable cause; (4) that the prosecuting attorney was guilty of prejudicial misconduct. As to the offer to sell, he asserts (5) that the court failed to instruct the jury as to

certain matters. We have concluded that only the first point has merit.

1. *The manner in which the evidence was obtained deprived appellant of due process of law.*

 Acting upon information from an informer that a man was coming to her flat to sell her a narcotic, State Narcotic Inspector Gazzola, accompanied by Inspector Zelis, went to her flat. The informer, one Jane or Juanita Hasse, admitted them, and when the doorbell rang they concealed themselves. Hasse then admitted appellant. When she shut the door, Gazzola stepped into the hallway and said "Get him" and "I'm a State Narcotic Officer." Zelis testified that he rushed out and grabbed appellant from behind, putting one hand on his mouth and the other on his throat. He "grabbed him by the throat and the mouth." Appellant tried with one hand to pull Zelis' hand from his mouth and to put his other hand, which was closed, to his mouth. Zelis gripped appellant's neck as hard as he could, and "choked" him. He continued to choke appellant for at least a minute and a half. Gazzola, meanwhile, grabbed appellant's hands or arms, and the three men struggled and fell to the floor. Finally, Gazzola got handcuffs on appellant at which point, and not before, Zelis stopped choking appellant. As the officers raised appellant from the floor they found under him a bindle of heroin where none had been before. This was seized by them and received in evidence on the possession count. There was no evidence of possession of any other heroin.

The attorney general suggests that there is a conflict in the testimony as to whether Zelis did choke appellant, thus bringing the case within the rules stated in *People* v. *Smith,* 50 Cal. 2d 149 [323 P.2d 435]. We cannot find such a conflict. Zelis said that he did not choke in a manner that would kill appellant, but this does not contradict his other testimony set forth above. Gazzola neither confirmed nor denied Zelis' testimony. He first said that he did not know what Zelis did; he didn't see him choking appellant, and Zelis did not choke him for a minute and a half. He instructed Zelis to grab appellant's arms. We do not think this evidence rises to the dignity of a conflict.

Appellant's chief reliance is upon *People* v. *Martinez,* 130 Cal.App.2d 54 [278 P.2d 26], which applies the rules of *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]. The facts of *Martinez* are almost identical

with those of the case at bar, except in one respect. There the defendant had put the narcotic in his mouth before he was seized, choked and wrestled to the ground, at which point he spat it out. In the present case appellant had not placed the narcotic in his mouth before he was subjected to the same treatment. The attorney general urges that this difference is controlling. He emphasizes the language in *Martinez*: "brutal force for the extraction of evidence from the person of an accused" (130 Cal.App.2d at p. 58). He asserts that the officers "used no more force than was reasonably necessary to prevent the appellant from placing the narcotic in his mouth and disposing of it," and that "[s]uspects have no constitutional right to destroy or dispose of evidence."

With the last proposition we heartily agree, but it does not answer our problem. Here, as in *Martinez*, the force was used to obtain the evidence, which was extracted from appellant's hand, not from his mouth, but it certainly cannot be said that no more force was used than was necessary to accomplish this purpose. Zelis would have accomplished the purpose if he had followed Gazzola's instructions to grab appellant's arms. If, as was stated in *Martinez*, and as we agree, "The question . . . is not how hard an officer may choke a suspect to obtain evidence but whether he may choke him at all" (130 Cal.App. 2d at p. 56), the answer given there applies equally here. Here the purpose was just as much to obtain evidence from appellant's person as it was there. Constitutional rights do not depend on so fine a distinction as we are asked to make. The comment of the court in *Martinez*, at page 57, is, we think, à propos here: "we accept as our guide what we believe to be the enlightened thinking of all people who believe in the dignity of the individual and that justice in its larger sense is synonymous with fair play. And aside from the very few who entertain the callous belief that the conviction of an offender is of more importance to society than the lawfulness of the means by which it is accomplished, we are confident that the conduct of the officer[s] in question here would meet with universal condemnation."

We do not think that our holding, properly applied, will " 'operate as a blue print for the hiding and destruction of incriminating evidence' " (*ibid.*, p. 57) any more than has the holding in *Martinez*.

That case has since been cited six times. In *People* v. *Woods*, 133 Cal.App.2d 187 [283 P.2d 778], the defendant dropped the incriminating evidence *before* the brutality occurred. The

court severely criticized the officer involved, citing *Martinez*, but affirmed because it was not by the brutality that the evidence was obtained, and because appellant made no point of it on appeal. (P. 192.) *People* v. *Woods,* 139 Cal.App.2d 515 [293 P.2d 901], involved the extraction of evidence from the defendant's person, but the court held that no brutality was involved. In *People* v. *Smith,* 50 Cal.2d 149 [323 P.2d 435], there was evidence that the defendant had not been choked, and *Martinez* was distinguished on that ground. *People* v. *Conterno,* 170 Cal.App.2d Supp. 817, 829 [339 P.2d 968], involved no brutality. *People* v. *Poole,* 174 Cal.App.2d 57 [344 P.2d 30], was a case in which there was testimony that the defendant spat out the narcotic voluntarily. *People* v. *Dawson,* 127 Cal.App.2d 375 [273 P.2d 938], decided before *Martinez* but after *Rochin,* is similar to *Poole.* So is the very recent case of *People* v. *Sanchez,* 189 Cal.App.2d 720, 726-727 [11 Cal.Rptr. 407]. No case has questioned *Martinez.* We think that it was correctly decided, and is applicable here.

2. *Appellant was not denied compulsory process.*

██ The information charging unlawful possession was filed October 17, 1958. The case was set for trial on January 14. Before that date, counsel for appellant had a subpoena served upon the informer, Hasse. She did not appear on the 14th. On that day, after the case was continued until February 16, counsel advised the court of her absence, and orally moved for "a body attachment." The court suggested that an affidavit be filed. This was done, and counsel's motion was heard on January 21. The court ordered a bench warrant issued, with $500 bail. Following the hearing, the court set aside the order, considering the affidavit insufficient. Over counsel's protest the matter was continued to January 28, at which time the court ordered a "body attachment," with $500 bail. This was issued, and the sheriff later returned it unserved. On February 16, the matter was continued until March 17, without objection. Thereafter there were various continuances and motions on March 17, April 1, 8, 13, 16, 20 and 21, May 6 and 18, June 8, July 17 and 29, August 12, 19 and 24. At none of them was the matter mentioned. On August 24 the case was set for trial, without objection, for September 10, and it went to trial on that date. At the trial, counsel did, at the outset, raise the point, which was ultimately overruled. Counsel testified that he had done nothing about the absent witness since March.

We can find no violation of constitutional right here. Compulsory process—a subpoena—was issued and served. It proved ineffective. The court properly required a showing of need before issuing a body attachment, especially since the trial had been postponed for a month. There is no showing that the sheriff was not diligent in attempting to find the witness, and no showing that she would have been found if the attachment had issued earlier. Moreover, there is no showing whatever of any diligence thereafter on appellant's part for a period of some six months.

The Penal Code provisions relating to subpoenas (Pen. Code, §§ 1326-1332) do not contain any provision for the issuance of a warrant or attachment to compel the attendance of a subpoenaed witness who does not appear, as is provided in Code of Civil Procedure, sections 1993, 1994, in relation to civil actions. However, Penal Code, section 1332, dealing with forfeiture of the undertaking given by a witness to assure his appearance, seems to contemplate a similar procedure. Sections 878-882 of the Penal Code, which do provide for such a procedure, on their face deal only with the powers of a committing magistrate who holds the defendant to answer, and then only with a material witness examined before the magistrate on the part of the People. (Pen. Code, § 878.)

We think that, whether such a procedure is provided for in the Penal Code or not, the court has power, in carrying out its duty under article I, section 13, of the Constitution to assure to the defendant "the process of the court to compel the attendance of witnesses in his behalf" to utilize a similar procedure to that provided for in Code of Civil Procedure, sections 1993, 1994. Such power was recognized by our Supreme Court as long ago as 1886, in *People* v. *Marseiler,* 70 Cal. 98 [11 P. 503]. See also *People* v. *Bossert* (1910), 14 Cal.App. 111 [111 P. 15], where the matter is discussed at length, and the court reversed because the trial court refused to issue a bench warrant to compel the attendance of defendant's witnesses.

The difficulty with appellant's position is that here the court did issue the requested process, and there is no showing that anything that the court did or refused to do is the cause of the absence of the witness at the trial. The Marseiler case is in point; it held that the court could require a showing of need for the requested process, which is just what the court did in the present case. Moreover, nowhere in the record is there any showing that Hasse's testimony would have been in

any way helpful to appellant or that the lack of her testimony in any way prejudiced him.

3. *Appellant did not raise the question of lack of probable cause.*

■ Appellant claims that the officers had insufficient information on the basis of which to make the arrest, there being no showing that Hasse was a reliable informant. The only objection made at the trial was based upon the absence of Hasse, not upon lack of probable cause. Under these circumstances, the point is not available here. (*People* v. *Richardson,* 51 Cal.2d 445, 447 [334 P.2d 573].) We do not suggest that the point would be good had it been properly raised; it is not before us for decision.

4. *There was no prejudicial misconduct by the prosecutor.*

Appellant cites certain portions of the transcript, which reflect objections to certain questions as calling for conclusions and opinions and to others as leading. Some were overruled; some were sustained. Nothing prejudicial appears.

5. *The court was not required, on its own motion, to define the words "offer to sell, furnish and give away."*

■ The evidence in support of the indictment showed a clear case of an offer to sell a narcotic. The court instructed the jury substantially in the language of Health and Safety Code, section 11500, delineating this offense. No request for further definition was made. It has been held that the words of the statute in question are such that "[m]en of common intelligence do not have to guess at what it means." (*People* v. *Blake,* 179 Cal.App.2d 246, 253 [3 Cal.Rptr. 749]; and see *People* v. *Young,* 44 Cal.App. 279 [186 P. 383].) If appellant desired further instructions on the question, they should have been requested. (*People* v. *Kuykendall,* 134 Cal.App.2d 642 [285 P.2d 996]; *People* v. *Reed,* 38 Cal.2d 423, 430 [240 P.2d 590].)

The judgment of conviction of unlawful possession of heroin, under the information, Superior Court No. 55249, is reversed. The judgment and order denying a new trial under the indictment, No. 55766, is affirmed.

Bray, P. J., and Tobriner, J., concurred.

Petitions for a rehearing were denied May 9, 1961, and respondent's petition for a hearing by the Supreme Court was denied June 14, 1961.