[Crim. No. 1820. Fourth Dist. Nov. 23, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. HAROLD
EUGENE DICKENSON, Defendant and Appellant.

George H. Chula and Russell E. Parsons for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

STONE, J.*—A jury found defendant guilty of possession of a narcotic, violation of section 11500 of Health and Safety Code. He admitted a prior conviction for possession of narcotics. Defendant's motion for a new trial was denied; he was sentenced to the state prison; and this appeal from the judgment and from the order denying motion for a new trial followed. The motion for a new trial was filed subsequent to September 15, 1961, the effective date of the amendment to Penal Code section 1237 abolishing appeal from an order denying a motion for a new trial in a criminal case, except in certain special circumstances which are not applicable here. Thus the appeal from the order denying motion for a new trial must be dismissed, as it was taken from a nonappealable order.

Preceding defendant's arrest, Sergeant Dodge, a San Diego Police Officer, received information from a federal guard at the Mexican border that an unidentified informer reported that two white males had obtained a quantity of heroin in Mexico, crossed the border with it and were proceeding toward San Diego in a bluish MG roadster bearing license number PUG 319.

Sergeant Dodge picked up Officer Wilson and they drove in Dodge's private automobile along Highway 94 until they observed an MG bearing license number PUG 319. The officers pulled alongside the MG and Officer Wilson, after observing the facial expression and the eyes of defendant passenger, concluded that he was under the influence of a narcotic. The driver was ordered to stop the car, which he did only after Wilson displayed his gun. The two occupants were ordered out of the car, and one of the officers noticed that defendant was making swallowing motions. When asked if he were swallowing "it" defendant did not answer, and an officer attempted to prevent defendant from swallowing. A

---

*Assigned by Chairman of Judicial Council.

scuffle ensued, during which defendant's breathing became labored, he turned blue and became semiconscious, apparently from suffocation. An officer removed a rubber contraceptive containing heroin, from defendant's throat, his breathing resumed and his color returned. Defendant was charged with possession of heroin, tried, and found guilty.

Defendant does not deny possession of the narcotic. To quote the statement of his counsel in the trial court, "We are not denying that this is heroin, that we had the heroin, it was in our possession, the only question we are going into at this time was the stopping and the force used in removing it from him." Defendant's position on this appeal is essentially the same except that he has, additionally, alleged errors occurring during the course of the trial. His contentions are: "(I) It is reversible error to try the question of probable cause for arrest, search and seizure before the jury. (II) The defendant's arrest, search and seizure was a violation of due process of law. (III) The forcible search and seizure of evidence from the defendant was barbaric and in violation of due process of law. (IV) The court's failure to order disclosure of the informant's name requires reversal of the judgment. (V) The prosecutor was guilty of prejudical misconduct. (VI) The trial judge's prejudical misconduct of vicious attacks on defense counsel's ability and integrity is unequaled in the annals of criminal jurisprudence."

Defendant's assertion that the court erred in permitting evidence of probable cause for arrest, search and seizure to be received in the presence of the jury is precisely the point that was raised in *People* v. *Russell*, 196 Cal.App.2d 58 [16 Cal.Rptr. 228]. ██ The court in *Russell* makes a well considered analysis of the leading cases discussing the question, and concludes, at page 61 of the opinion, that: "Thus, the manner in which the issue of probable cause is heard during the trial of a case and determined by the lower court appears to be a matter within its discretion; and in the absence of any showing here of abuse of discretion or prejudice, we hold there was nothing in the procedure used by the trial court requiring a reversal."

The thrust of defendant's argument on this point is that the court committed a procedural error as a matter of law in permitting such evidence to go to the jury. This contention must be rejected upon the authority of the *Russell* case. ██ Also, the record reflects that counsel for defendant, by both direct and cross-examination, elicited much of the

132

evidence concerning the arrest, search and seizure. He cannot now base an assignment of error upon the introduction of the very evidence he helped develop. *(People* v. *Terry,* 180 Cal.App.2d 48, 53 [4 Cal.Rptr. 597].)

Finally, the rule of *People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469], upon which defendant relies, is predicated upon the fundamental principle that a defendant must be protected from the introduction of inadmissible evidence which might be received on the question of reasonable or probable cause for both arrest and search and seizure; evidence which might be prejudicial to the defendant on the issue of guilt. Absent a showing by defendant that inadmissible evidence was received in the presence of the jury, there is no ground for reversal. No evidence that could be classified as inadmissible or as prejudicial to defendant under the reasoning of *Gorg* or *Russell,* is found in the record.

The officers had no warrant for defendant's arrest, and he argues that it was made without probable cause. He carries the argument one step further, contending the search and seizure which followed his arrest without a warrant, violated due process of law. In connection with his argument alleging lack of probable cause for arrest, defendant also asserts the court erred in refusing to order disclosure of the informer's identity.

The initial question is whether there was probable cause for defendant's arrest; the answer to which rests upon whether the arresting officers had reasonable cause to believe defendant had committed or was committing a public offense in their presence. (Pen. Code, § 836, subd. 1.) "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." *(Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250]; *People* v. *Fischer,* 49 Cal.2d 442 [317 P.2d 967]; *People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Russell, supra,* 196 Cal.App.2d 58, 63.)

The car in which defendant was riding was under surveillance because a federal border patrol officer, one Maxcy, called Sergeant Dodge of the San Diego Narcotics Squad and advised him that an informer had told him two white males had obtained a quantity of heroin in Mexico and crossed the border traveling north in a bluish MG roadster bearing a certain license number. Upon receiving the information, Sergeant Dodge picked up Officer Wilson, a 19-year veteran

of the San Diego Police Force, 13 of them as a member of the Narcotics Squad. Dodge and Wilson commenced a surveillance along Highway 94, Dodge driving his private, unmarked automobile with Wilson as a passenger. The officers came upon a bluish MG roadster bearing the license number which had been supplied by the border guard. There was no top on the car, and the officers observed two males, the driver and defendant passenger. The MG was cruising between 30 and 40 miles an hour in a 65-mile zone, the passenger looked back at the officers, then leaned forward so his head and shoulders were out of sight. He straightened up, looked back again, and then leaned forward a second time; whereupon Dodge and Wilson pulled alongside the MG. In *People* v. *McLaine*, 204 Cal.App.2d 96 [22 Cal.Rptr. 72], it was held, at page 101:

"In the present case, in view of the report received by the officers by radio as to the robbery which had occurred earlier that evening some three miles away, which information included a description of the participants, and in view of the actions of one of the occupants of the automobile in turning around several times in apparent observation of the police car, the officers were warranted in stopping the automobile for the purpose of interrogating the occupants."

Wilson testified that he was opposite the passenger and had an opportunity to observe his face, which was expressionless, and that the pupils of defendant's eyes were constricted. Wilson testified that he had qualified as an expert on narcotics upon numerous occasions, that he had done considerable research and study in the field of narcotics, and that he had learned that use of heroin constricts the pupils of the eyes. By comparing the eyes of defendant with those of the driver, the officer concluded that defendant was under the influence of drugs. Officer Wilson further testified that only then did he order the driver to pull over, and that when the driver hesitated he exposed a gun he had been holding below the window of the car, and said, "Now." Wilson further testified that after the car stopped his belief that defendant was under the influence of an opium derivative was confirmed; and defendant was handcuffed.

The officers noted that defendant's cheeks were swelled, that his neck muscles stood out, and that he appeared to be gagging. Defendant was asked if he had swallowed "it," meaning a narcotic, but he did not reply. He refused to open his mouth and continued to move his neck muscles and

Adam's apple apparently trying to swallow. Sergeant Dodge placed his fingers over defendant's Adam's apple to prevent his swallowing, but the attempt was unsuccessful. Defendant continued trying to swallow, but since the object which was in the lower part of his mouth or upper part of his throat was a rubber contraceptive containing an amount of heroin, defendant was unable to swallow it. The officers were unable to make him spit out the contraceptive or he was unable to do so. Defendant tried to draw away from the police, and a scuffle ensued. According to the testimony of the officers, defendant's color grew darker and his breathing very labored; he appeared to be suffocating. He then stopped struggling, his breathing stopped and he became semiconscious. One of the officers forced defendant's mouth open and pulled out the rubber contraceptive, whereupon his breathing resumed and color returned to his face.

The question narrows to one of credibility of witnesses, since the officers had probable cause to arrest defendant, according to their testimony.

. Defendant contends the testimony of the officers was completely incredible and, further, that Wilson's testimony was fabricated. During the course of . the trial Officer Wilson testified that he could judge the size of the pupils of a person's eyes. The district attorney asked him to step ·down from the witness stand to counsel table and estimate the size of defendant's pupils. Defense counsel requested that the officer remain on the witness stand, look at defendant seated at counsel table, and make his observation and estimation from that distance. This the witness did, in the presence of the jury. Apparently the estimate was correct, as no objection thereto appears in the record. In *People* v. *Corrao,* 201 Cal.App.2d 848, 853 [20 Cal.Rptr. 492], the court stated: ''It is not impossible to walk up to a person in a hallway ·and reasonably conclude· from observations that he is under the influence of a narcotic.'' (See *People* v. *Quinn,* 194 Cal. App.2d 172, 176 [14 Cal.Rptr. 814].)

A reversal by this court on the ground of insufficiency of the evidence cannot be had unless it appears that the testimony which was relied upon by the trier of fact· was inherently improbable. *(People* v. *Carr,* 170 Cal.App.2d 181 [338 P.2d 479].) ''To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must .be apparent without re-

sorting to inferences or deductions." *(People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].) ▉ Neither condition is applicable in the case before us. The courtroom demonstration alone was sufficient to remove from the realm of inherent improbability the testimony of Officer Wilson that he made the arrest as the result of his observation of the eyes of defendant and his expressionless face.

▉ No warrant was necessary to conduct a reasonable search incident to the arrest which was justified by probable cause. Defendant's appearance when he got out of the car, his repeated attempts to swallow, his failure to answer the officers' questions, and his gagging, all justified the search without a warrant. *(People* v. *Corrao, supra,* p. 853; *People* v. *Winston,* 46 Cal.2d 151, 162-163 [293 P.2d 40] ; *People* v. *Quinn, supra; People* v. *Montano,* 184 Cal.App.2d 199, 205 [7 Cal.Rptr. 307].)

▉ That the search disclosed evidence of a different crime (possession) from that suspected at the time of the arrest and at the time the search was undertaken (under the influence) does not bar the use of the evidence found. *(People* v. *Alcala,* 204 Cal.App.2d 15, 21 [22 Cal.Rptr. 31] ; *People* v. *Galceran,* 178 Cal.App.2d 312, 317 [2 Cal.Rptr. 901]. See also *People* v. *Silvers,* 196 Cal.App.2d 331, 336 [16 Cal.Rptr. 489].)

▉ Defendant's contention that the trial court erred in not requiring the prosecution to disclose the identity of the informer who "tipped off" the border guard, is untenable since the arrest was predicated upon the observations of Officer Wilson. While it is true the surveillance resulted from an all points bulletin based on information obtained from an unnamed informer, the arrest followed the surveillance and was made pursuant to observations of defendant by Officer Wilson. The cases of *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39], and *People* v. *McShann,* 50 Cal.2d 802 [330 P.2d 33], hold that the identity of the informer must be revealed when the prosecution seeks to justify the arrest and the search upon communications or information obtained from an informer. The arresting officer here did not rely upon the informer in making the arrest or the search which followed. *(People* v. *Hernandez,* 188 Cal.App.2d 248, 252 [10 Cal.Rptr. 267] ; *People* v. *Harrell,* 177 Cal.App.2d 411, 413 [2 Cal.Rptr. 340] ; *People* v. *McMurray,* 171 Cal.App.2d 178, 183 [340 P.2d 335].) Nor has it been shown in what

manner disclosure of the informer's identity would be relevant or helpful to defendant. *(In re Harris,* 56 Cal.2d 879, 885 [16 Cal.Rptr. 889, 366 P.2d 305].) We find no error in the denial by the trial court of defendant's motion to require disclosure of the identity of the informer.

 Defendant next argues that the search and seizure violated due process in that it was conducted in a forceful and barbaric manner. This question essentially is one of fact. If we were to accept defendant's version which, in substance, is that the officers choked him into unconsciousness before removing the contraband, certainly there would be grounds to hold that the officers resorted to brutality in making the arrest. *(People* v. *Brinson,* 191 Cal.App.2d 253, 255 [12 Cal.Rptr. 625].) However, the police officers testified that they did not choke defendant, rather that they attempted to prevent him from swallowing the evidence by holding his Adam's apple.

It isn't clear from the testimony whether defendant, at the time he alighted from the car, was swallowing or attempting to regurgitate something which had stuck in the back of his mouth or upper part of his throat. Defendant's breathing was labored, his neck muscles stood out and he was making abnormal movements in his throat. While the officers were trying to prevent his swallowing the evidence defendant turned blue and became semiconscious. The officers testified that a rubber contraceptive containing heroin was removed from defendant's mouth to prevent his choking to death. The question is whether the trier of fact was justified in believing the officers' testimony that they did not choke defendant in attempting to prevent his Adam's apple from moving, and that he choked because he was trying to swallow the rubber contraceptive which contained heroin powder. The jury could well have believed the officers' version of what happened since it is common knowledge that there is danger of suffocation if a child puts an empty balloon into his mouth. An adult attempting to swallow anything as large and as long as a rubber contraceptive with a powdery substance in the end, could very well find himself in the same condition as that described by the officers. They testified a clogging of his throat caused defendant to either swallow or regurgitate in order not to suffocate. The jury could also have concluded that defendant brought on the condition which required the officers to place him in a prone position, face downward, and to slap his back, and to reach into his mouth to get

the contraceptive, as a result of defendant's own dangerous and foolhardy act of attempting to swallow such an object in the first place.

In *People* v. *Sanchez,* 189 Cal.App.2d 720 [11 Cal.Rptr. 407], at pages 726-727, the court said: "The amount of force used is clearly a question of fact. *(People* v. *Smith,* 50 Cal.2d 149 [323 P.2d 435]; *People* v. *Dixon,* 46 Cal.2d 456 [296 P.2d 557].) As it had a right to do, the lower court rejected defendant's version of what occurred—that the officer choked him—and accepted as true the testimony of Officer Garrahan —that he did not choke or hurt the defendant or interfere with his breathing, that he placed his hand on defendant's throat to prevent him from swallowing the object in his mouth and when he told the defendant to spit he immediately did so. *(People* v. *Smith,* 50 Cal.2d 149 [323 P.2d 435]; *People* v. *Poole,* 174 Cal.App.2d 57 [344 P.2d 30].)

"The evidence reveals that under the circumstances the officer's conduct was entirely reasonable, to prevent defendant, whom he suspected of then having narcotics in his mouth, from disposing of the evidence; his acts do not constitute the unconscionable, brutal or shocking force condemned in *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]. The parties engaged in no struggle. Defendant gave no resistance and he 'almost immediately' did what he was told."

The case before us differs from the *Sanchez* case in that defendant did not spit out the contraband when the officers attempted to prevent him from swallowing it. The record supports the inference that the reason he did not spit it out was that he was unable to spit it out; it was stuck in his throat. Once he stopped breathing and turned blue, it was a case of removing the contraceptive from his throat to save his life. The discussion in *Sanchez* is applicable to the instant case in that the acts of the officers were not brutal or shocking within the rationale of *Rochin* v. *California, supra.* That no unnecessary force was used by the arresting officers is also supported by the reasoning in *People* v. *Woods,* 139 Cal.App.2d 515 [293 P.2d 901].)

Defendant's allegation that the district attorney was guilty of prejudicial misconduct is without support in the record. Most of the argument is directed to the prosecutor's introduction of evidence which was admitted by the court, or questions which witnesses were permitted to answer over objections by defense counsel, or objections by the district attorney to ques-

tions asked by defense counsel which were sustained. Yet the court ordered the proffered evidence admitted, overruled defendant's objections to the prosecutor's questions, and sustained the district attorney's objections to defense counsel's questions. The substance of defendant's argument is directed, basically, at the trial court. A review of the record discloses no prejudicial misconduct by the district attorney that would warrant a reversal, and there is no point in burdening this opinion with a discussion of defendant's insubstantial argument on this point.

The discussion of the prosecuting attorney's conduct brings us to defendant's final assignment of error: prejudicial misconduct on the part of the trial judge. The record is a lengthy one and there are numerous citations to alleged misconduct on the part of the court. A review of the complete record indicates that defense counsel continually and studiously antagonized the court by repeating a question to which objection had been sustained, by repeating objections after rulings by the court, and by repeating a motion after an adverse ruling. We have not quoted the challenged remarks of the court, all of which question the good faith and the ethics of defense counsel, because to be correctly evaluated they must be read in context. Faithful excerption would require the quotation of many pages of transcript. It can be fairly said from the record, however, that the actions of defense counsel during the trial, whether purposeful or unintentional, goaded the court to rebuke him repeatedly and in a progressively emphatic manner. Had the remarks of the court been made out of the presence of the jury, it is clear there would have been no error, since defense counsel brought them on himself. Yet when made in the presence of the jury, the remarks were intemperate, to say the least. On the other hand, it cannot be said that the remarks in the presence of the jury were entirely without justification since each time the court rebuked defense counsel it was in response to an act in the presence of the jury defying the court's authority. (*People* v. *Oliveria*, 127 Cal. 376, 382 [59 P. 772].)

In weighing the question of reversible error, the most critical circumstance is that the court meticulously avoided expressing any opinion or intimation as to the guilt or innocence of the defendant, and from discrediting any witness for the defense. (*People* v. *Travis*, 129 Cal.App.2d 29, 39 [276 P.2⁷ 193].) Furthermore, each time the court reprimanded defense counsel the jurors were admonished that they must not

construe the remarks as an indication of the court's feeling as to the guilt or innocence of the defendant, and that the remarks about defense counsel must not prevent the jury from giving defendant a fair and impartial trial. The court also advised the jury that they must insure the defendant his right to a fair trial guaranteed by the Constitution. *(Germ* v. *City & County of San Francisco,* 99 Cal.App.2d 404, 415 [222 P.2d 122] ; *Jones* v. *Bayley,* 49 Cal.App.2d 647, 657 [122 P.2d 293].) In addition to an admonition to the jury upon the occasion of each rebuke, at the conclusion of the case the court instructed the jury as follows:

"If during this trial I have said or done anything which has suggested to you that I am inclined to favor the claims or position of either party, the prosecution or the defendant, you will not suffer yourselves to be influenced by any such suggestion.

"Now, ladies and gentlemen, I desire to amplify somewhat this instruction at this time. The Court's function, as I am sure you are aware, is to direct and control the admission of the evidence in the case and the conduct of counsel during the trial, insofar as the Court feels that it is pertinent to his duty in the conduct of the case. In other words, the Court is like an umpire in a ball game, football game, a referee, he has to control and he has to call the fouls and I don't expect perhaps that the spectators or the jurors necessarily will agree that the Court is right, nor do I say that I am right, however, that is my function. Counsel for the defendant in this case, I know in one instance, made a motion for mistrial based on the fact that the Court talked in a loud voice. Well, unfortunately or fortunately, the good Lord gave me a parade ground voice and I have been using it for a long time and I very seldom, either as a lawyer or as a judge, am asked to repeat anything nor do I get any complaints that I can't be heard. That doesn't mean that I am aroused at all, but let me say this: If by chance, by some of these remarks you have gathered the idea that I do not approve of counsel for the defendant nor of his tactics, which I might not have done, it is still not your affair and you must not let my action or my remarks to counsel for the defendant in any wise affect your deliberations in this case, because as I said to you, not once, but several times, I am sure the defendant in this case is entitled to receive a fair trial at the hands of this Court and at the hands of this jury and he is entitled to that regardless of what his counsel may have done or said. He can't con-

trol the actions of his counsel at all and it would be dreadfully wrong if you folks were to consider or hold any act or statement of counsel against the client, and likewise, you should not take the Judge's opinion of the conduct of counsel into consideration in your deliberations, because that doesn't count either. This man is entitled to a fair trial at the hands of this jury and he has asked for a jury. If he didn't want a jury he would have waived it and gone to trial before the Court without a jury. Now, let me close this instruction with the formal part of it.

"I have not expressed, nor intended to express, nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief; what facts are or are not established; or what inferences should be drawn from the evidence. So if any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it."

We wish to make it clear that even though we have concluded the remarks of the trial court concerning defense counsel did not constitute reversible error, nevertheless we do not approve of the manner in which the remarks were made. Even when justified, criticism of counsel should be made out of the presence of the jury if possible. On the other hand, we recognize that events happen rapidly during the course of a trial and that it is not always feasible to excuse the jury in order that counsel may be reprimanded. It is also true that the trial judge must maintain control of proceedings in his court and when counsel defies the authority of the court in the presence of the jury, it is sometimes necessary to reprimand counsel in the presence of the jury.

In view of the record of this case taken in its entirety, we do not believe the remarks of the court constituted reversible error. (Const. art. VI, § 4½; *People* v. *Denton,* 78 Cal.App.2d 540, 549 [178 P.2d 524].)

The judgment is affirmed. The order denying new trial being a nonappealable order, the purported appeal therefrom is dismissed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied December 21, 1962, and appellant's petition for a hearing by the Supreme Court was denied January 16, 1963.