Filed 4/26/16  P. v. Williams CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSIE RAY WILLIAMS,<br><br>    Defendant and Appellant. | B262822<br><br>(Los Angeles County<br>Super. Ct. No. TA131992) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant Jessie Ray Williams of assault by means likely to produce great bodily injury and found true the allegation that Williams personally inflicted great bodily injury on the victim, Randy Chao. The trial court sentenced Williams to an aggregate term of 31 years in state prison.

Williams' sole contention on appeal is that the court erred in admitting out-of-court statements made by Chao to law enforcement officials under the past recollection recorded exception to the hearsay rule set forth in Evidence Code section 1237. We disagree that the court erred in admitting several of the challenged statements because Williams either failed to specifically object to those statements or elicited the same facts covered by the statements through his counsel's questioning. Although we agree that the court erred in admitting one of Chao's recorded statements, we conclude that error was harmless and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Assault

Chao owned Ace Mart in Paramount. For several years, Williams frequented Chao's store to cash checks and buy hair dye. On February 5, 2014 at around 1:45 p.m., Williams entered Ace Mart and asked Chao for the hair dye he liked. Chao retrieved the hair dye and walked to one of the store's counters. Williams grabbed a glass bottle of water from a cooler and met Chao at the counter.

While Chao and Williams were talking, Williams struck Chao on the right side of his face with the glass bottle. Williams then knocked the counter over and put his arm around Chao's neck to hold him down. After Chao fell unconscious, Williams walked to the front of the store and closed the door. Williams then walked back to Chao and kicked him in the head.

Around 1:51 p.m., deputy sheriffs responded to Ace Mart. They arrested Williams and pulled Chao out to the street to await paramedics. At the hospital, Chao received 15 stitches to the right side of his face.

2

## 2. The Charges

Williams was charged with attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664/187, subd. (a); count one); attempted second degree robbery (Pen. Code, §§ 664/211; count two); assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count three); and assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4); count six).[1] As to counts one, two, and six, the People alleged Williams personally used a deadly and dangerous weapon (Pen. Code, § 12022, subd. (b)(1)), and as to all counts, the People alleged Williams personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)).

## 3. The Evidence Code Section 402 Hearing

During an Evidence Code section 402 hearing, the prosecutor informed the court that Chao could no longer recall making certain statements to a law enforcement officer after he was attacked by Williams. Specifically, Chao did not recall telling a law enforcement officer that " 'It was Jessie. He did this to me. He hit me with the bottle,' " or that Williams said, " 'Give me your money or I'll kill you.' " The prosecutor planned to use the officer's report to try to refresh Chao's memory. However, in the event Chao's memory could not be refreshed, the prosecutor intended to introduce Chao's statements as a past recollection recorded under Evidence Code section 1237. Williams' attorney objected because Evidence Code section 1237 does not apply where the witness has absolutely no memory of making the statements. She also noted that Chao made subsequent contradictory and detailed statements to law enforcement. At the conclusion of the hearing, the court stated "at this time, I am just stating that the People can use the past recollection recorded. It does appear to fit the criteria under the hearsay evidence exception, and that will be permitted."

---

[1] The charges of false imprisonment by violence (Pen. Code, § 236; count four) and second degree commercial burglary (Pen. Code, § 459; count five) were dismissed before trial.

3

### 4. The Trial

#### a. Prosecution evidence

At trial, the prosecution played the surveillance video from Ace Mart. There was no accompanying audio. Chao's testimony was consistent with what was depicted in the video. Chao said that when he retrieved the hair dye, Williams asked Chao to check that it was the correct color. When Chao leaned forward to look at the box more closely, Williams struck him with the bottle, knocked the counter over, and put his arm around Chao's neck, strangling him.

Chao explained that during and after the attack, he went in and out of consciousness. He testified that after being hit and strangled, he remembered someone pulled him out of the store. The next thing Chao remembered was riding in an ambulance with a deputy sheriff where Chao identified Williams as his attacker.

When asked whether he remembered telling Deputy Sheriff Karla Farias what statements Williams made to him, Chao said he did not remember. The prosecutor showed Chao a police report and attempted to refresh Chao's memory. When Chao said he could not read the report because he had not brought his eyeglasses, the prosecutor asked, "Did you—do you remember telling the police that Jessie says—said, 'Give me all the money'?" Chao answered, "I don't remember."

On redirect, the prosecutor questioned Chao about statements he made to Deputy Farias after he was pulled out of the store while they waited for the ambulance. Chao had no memory of seeing or talking to Deputy Farias on February 5, 2014. He testified that he could only recall seeing Deputy Farias at Williams' preliminary hearing. In response to questions about specific statements he made to Deputy Farias, Chao repeated that he did not remember making any statements to her. The prosecutor asked whether Chao had been as truthful and honest as possible when he spoke to officers on February 5, to which Chao answered, "I try, yeah."

The prosecutor then called Deputy Farias. She testified that she wrote her report on the day of the incident and that her use of quotations indicated verbatim statements Chao made. The prosecutor read statements directly from Deputy Farias' report,

4

including Chao's statement that the suspect "was a black guy" and that the suspect had told him " 'Give me money or I'll kill you.' " The prosecutor also read Chao's statement that the suspect " 'hit [him] on the face with a bottle.' " Deputy Farias confirmed that Chao had made those statements to her. Deputy Farias also testified that after Williams was arrested, he said, " 'Ma'am, it wasn't me. You need to get the people who did this. I was just trying to help the guy. It wasn't me.' " According to Deputy Farias, Williams repeated, several times, that it was not him and that they had the wrong person.

### b. Defense evidence

Williams testified that he had known Chao for two and a half or three years and that they had a friendly relationship. He stated that in the course of his work as a truck driver, he would have damaged drink and clothing items that he was told to dispose of. Williams said that instead of disposing of the items, he would give them to Chao to sell at Ace Mart. Williams also testified that Chao introduced him to a woman named Lydia. Williams said that he went to Ace Mart on February 5, 2014 because Lydia said Chao wanted to speak with him.

Williams explained his altercation with Chao as follows. Williams arrived at Ace Mart and Chao said he had the hair dye Williams liked. Williams went to get a bottle of water and met Chao at the counter. Chao began to yell at Williams regarding his relationship with Lydia. Williams then saw Chao reach for his belt, where Williams saw the handle of a gun. To prevent Chao from grabbing the gun, Williams struck Chao with the bottle, knocked over the counter, and held Chao down. Williams testified that he choked and kicked Chao so that Chao could not reach his gun.[2]

### 5. The Jury Verdict and Sentencing

The jury found Williams guilty of assault by means likely to produce great bodily injury and found true the personal infliction of great bodily injury allegation.

---

[2] No gun was found on Chao's body or inside Ace Mart, and Chao testified that he did not keep a gun or any other weapon at the store.

5

However, the jury found Williams not guilty of attempted second degree robbery and assault with a deadly weapon. The jury could not reach a verdict on the charge of attempted murder, and the court declared a mistrial as to that count; the court subsequently dismissed it.[3]

In a bifurcated proceeding, Williams waived his right to trial on his prior convictions. He admitted four prior strike convictions, three of which the court struck. The court sentenced Williams to an aggregate term of 31 years in state prison, consisting of four years for the assault conviction, which was doubled to eight years for the prior strike conviction, plus three years for the personal infliction of great bodily injury enhancement, plus five years for each of his four prior serious felony convictions.

## DISCUSSION

Williams contends that the trial court erred in allowing the prosecution to introduce statements made by Chao to Deputy Farias shortly after Chao was assaulted under the past recollection recorded hearsay exception in Evidence Code section 1237. Specifically, Williams contends that the court should not have permitted the prosecution to introduce the following statements by Chao that Deputy Farias recorded in her report: (1) Williams told Chao, "Give me all the money"; (2) Williams told Chao, " 'Give [me] money or [I will] kill you' "; (3) Chao reported, " 'No, it was a black guy. He told me, "Give me money or I'll kill you" ' "; and (4) Chao said Williams " 'hit me on the face with a bottle.' " Williams argues that the prosecution failed to establish an adequate foundation to admit these statements under Evidence Code section 1237 because Chao had no recollection of making them or having the conversation with Deputy Farias in which they were made. Williams also argues that the court should not have allowed Deputy Sheriff Pascual Delgadillo to testify that although Chao could not identify who attacked him when he first spoke to law enforcement, he later identified Williams as his attacker.

---

[3]     The jury did not make a finding as to the personal use of a deadly weapon allegation.

6

## I. The court did not err in admitting several of Chao's out-of-court statements.

At the Evidence Code section 402 hearing, Williams objected only to Chao's statements that Williams said, " 'Give me your money or I'll kill you' " and " 'He hit me with the bottle.' " Williams did not raise an objection at that hearing to any other statements made by Chao, and he did not object under Evidence Code section 1237 to any of the statements Chao made to Deputy Farias when they were elicited at trial. To preserve an evidentiary challenge for appeal, a defendant must make a timely objection at trial, "so stated as to make clear the specific ground of the objection"; otherwise, the claim is forfeited. (Evid. Code, § 353, subdivision (a); *People v. Holmes* (2012) 212 Cal.App.4th 431, 435-436.) Because Williams never objected to Chao's statement, " 'No, it was a black guy,' " when Chao was describing his attacker to Deputy Farias, Williams has forfeited any challenge to that statement on appeal.

Williams also waived any challenge to Chao's statement that Williams " 'hit [him] on the face with a bottle.' " Before the prosecutor asked Chao whether he told law enforcement that Williams had hit him on the face with a bottle, and before Deputy Farias testified that Chao made that statement to her shortly after the attack, Williams elicited a nearly identical statement during Chao's cross-examination. Williams' attorney asked Chao whether he told law enforcement, "[Williams] struck you with the bottle," to which Chao responded, "Yes." By eliciting the fact that Chao told law enforcement that Williams had struck him on the face with a bottle, Williams opened the door for the prosecution to introduce evidence of the same fact. (See *People v. Dickenson* (1962) 210 Cal.App.2d 127, 132 [a defendant "cannot . . . base an assignment of error upon the introduction of the very evidence he helped develop"].) Accordingly, Williams cannot complain on appeal that it was error for the court to admit Chao's statement that Williams hit him on the face with a bottle. (See *People v. Gorgol* (1953) 122 Cal.App.2d 281, 294 [a party who introduces evidence cannot object to "the admission of evidence of the same character offered by the adverse party"].)

7

Williams also challenges the admissibility of Deputy Delgadillo's testimony that Chao initially said he did not know who attacked him, but then later identified Williams as his attacker. Williams claims that the court erred in admitting Deputy Delgadillo's testimony, but he does not advance any arguments as to why the court should have excluded that testimony. Although Williams objected at trial that the prosecution was misstating the evidence while questioning Deputy Delgadillo, he does not raise that issue on appeal. Because Williams has not set forth any specific argument as to why the court erred in admitting Deputy Delgadillo's testimony, he has forfeited his challenge to that testimony. (See *People v. Hardy* (1992) 2 Cal.4th 86, 150 [a reviewing court will not address an issue raised by the defendant that is not supported by argument or citation to relevant authority].)

## II. The admission of Chao's statement that Williams said "Give me your money or I'll kill you" was harmless error.

We now turn to Williams' objection to Deputy Farias' testimony that Chao said that Williams said, " 'Give me your money or I'll kill you.' " Because an objection to this statement was raised during the Evidence Code section 402 hearing, it was preserved for appeal. (See *People v. Mayfield* (1997) 14 Cal.4th 668, 731-732 [defense counsel's objection during the Evidence Code section 402 hearing was sufficient to preserve the objection for appeal "even though the motion to exclude was not renewed when the prosecution offered the evidence during the trial"], abrogated on other grounds in *People v. Scott* (2015) 61 Cal.4th 363.) As we explain below, although the court erred by admitting this statement, the error was harmless.

Evidence Code section 1237 provides in pertinent part: "(a) Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement would have been admissible if made by him while testifying, the statement concerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately, and the statement is contained in a writing which: [¶] (1) [w]as made at a time when the fact recorded in the writing actually occurred or was fresh in the witness' memory; [¶] (2) [w]as made (i) by the witness

8

himself or under his direction or (ii) by some other person for the purpose of recording the witness' statement at the time it was made; [¶] (3) [i]s offered after the witness testifies that the statement he made was a true statement of such fact; and [¶] (4) [i]s offered after the writing is authenticated as an accurate record of the statement." We review a trial court's ruling on the admissibility of evidence under Evidence Code section 1237 for abuse of discretion. (See *People v. Cowan* (2010) 50 Cal.4th 401, 467.)

Evidence Code section 1237 creates a narrow exception to the hearsay rule that is justified by the declarant's ability to attest to the trustworthiness of his or her out-of-court statement. "The motive behind [Evidence Code] section 1237 is to allow previously recorded statements into evidence where the trustworthiness of the contents of those statements is attested to by the maker, subject to the test of cross-examination . . . ." (*People v. Simmons* (1981) 123 Cal.App.3d 677, 682 (*Simmons*), abrogated on other grounds as recognized by *People v. Gunder* (2007) 151 Cal.App.4th 412.) While Evidence Code section 1237 recognizes that a witness' memory concerning an out-of-court statement he or she made is likely to fade over time, the witness must have some recollection of making the statement to ensure the statement's reliability and trustworthiness. (See *Simmons*, *supra*, 123 Cal.App.3d at pp. 682-683.) The exception's required trustworthiness is not established when a witness has no recollection of making the statement or no memory of engaging in the conversation in which the statement was made. (See Evid. Code, (West's Ann.) § 1237, comment, p. 225 ["sufficient assurance of the trustworthiness of the statement is provided if the declarant is available to testify that he made a true statement"].) Otherwise, the witness would only be speculating about the truth of the statement or conversation which would carry no evidentiary value. (See *Simmons*, *supra*, 123 Cal.App.3d at pp. 683-684.)

Here, the prosecution failed to establish a proper foundation for Chao's statement because he had no recollection of making the statement or having the conversation with Deputy Farias in which the statement was made. Chao testified repeatedly that he had

9

no memory of speaking to Deputy Farias shortly after the attack. He also testified that he had never seen Deputy Farias until she testified at the preliminary hearing. Chao testified that the first memory he had of speaking to a law enforcement officer after the assault was when he spoke to a deputy sheriff inside an ambulance while being transported to the hospital, a conversation that occurred after the one in which he made the challenged statement to Deputy Farias. Because Chao could not remember speaking to Deputy Farias or telling her that Williams had said, "Give me your money or I'll kill you," that statement was not admissible under Evidence Code section 1237. Because the prosecution did not seek to admit the statement on any other grounds, the statement should not have been read into evidence.

However, we disagree with Williams' contention that he was prejudiced by the admission of Chao's statement because it undermined his claim of self-defense by portraying him as the aggressor. Even without hearing Chao's statement, we find it is not reasonably probable the jury would have believed Williams' claim of self-defense or otherwise reached a more favorable verdict. (See *People v. Fudge* (1994) 7 Cal.4th 1075, 1103 [prejudice from a trial court's evidentiary ruling is reviewed under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836].)

The surveillance video from Ace Mart shows an unprovoked Williams brutally attacking Chao. Although Williams claimed that he attacked first because he believed Chao was reaching for a gun in his waistband, that claim was not consistent with the attack as portrayed in the surveillance video. The video shows that Williams' head was turned to the side, away from Chao, when Williams struck Chao on the face with the bottle. Accordingly, Williams would not have been able to see Chao reach for a gun in his waistband before striking Chao on the face. In addition, Chao testified he never kept a gun or any other weapon at Ace Mart, and law enforcement never found a gun or any other weapon inside the store.

Williams' claim of self-defense was also undermined by his conduct during the assault. After hitting Chao on the head and strangling him until he fell unconscious, Williams temporarily stopped the assault to close the front door of Ace Mart only to

10

return to kick Chao in the head while he was on the floor. This conduct is wholly inconsistent with a claim of self-defense. More importantly, until he testified at trial, Williams never maintained that he assaulted Chao in self-defense. In fact, when Williams was first contacted at the scene he claimed that someone else had attacked Chao and that he was only trying to help. Williams also never told the deputy sheriffs at the scene that he believed Chao had a gun or that Williams feared for his safety. On this record, it is not reasonably probable the jury would have reached a more favorable verdict had Chao's statement to Deputy Farias been excluded.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

HOGUE, J.[*]

---

[*]  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.