[Crim. No. 5729.   Second Dist., Div. Two.   Dec. 17, 1956.]

THE PEOPLE, Respondent, v. HENRY GOODO, JR.,
Appellant.

Levy, Russell & DeRoy and Jack Levine for Appellant.

Edmund G. Brown, Attorney General, and William E.
James, Deputy Attorney General, for Respondent.

FOX, J.—Appellant challenges his conviction of the possession of marijuana (Health & Saf. Code, § 11500) on the grounds that his arrest was without reasonable or probable cause; that the search was therefore unlawful; and that the evidence thus seized, on which his conviction was based, was inadmissible. We have concluded that his position is well taken.

On March 18, 1956, at approximately 9:30 p. m., Police Officers Blankenship and Ward stopped a Mr. Bruce for interrogation on the corner of 29th Street and Vermont Avenue in Los Angeles. He told them that he lived at 1201 West 30th Street and volunteered the information that a certain person occupying quarters in the same apartment building in which he lived had a pound of marijuana in his room and that this person would be home about 11 p. m.

Bruce was not a confidential informant. The officers had never had any previous dealings with him. They had never seen him before and knew nothing of his past record or reliability. They had not had appellant under surveillance prior to this time.

Acting on this information, the officers proceeded to 1201 West 30th Street, arriving at approximately 10:15 p. m. Bruce let them into the community kitchen, which was adjacent to a hallway leading to appellant's room in the rear of the building. The officers peeped out the door and ob-observed appellant and one Miller enter appellant's room. Both men were empty handed. Some five minutes later the officers walked down the hallway to appellant's room and were about to knock when appellant opened the door. Officer Blankenship observed appellant was carrying a brown paper sack in his right hand in such manner that it could be disposed of rapidly. The officer testified that marijuana is usually carried in bulk in this kind of a sack but on two occasions, at least, he had observed it carried in a different fashion. The officer arrested appellant and seized the paper sack. It contained marijuana. The officers had neither a search warrant nor a warrant for appellant's arrest.

In *People* v. *Boyles*, 45 Cal.2d 652, 656 [290 P.2d 535], it was held that "reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt." In *Willson* v. *Superior Court*, 46 Cal.2d 291, 294 [294 P.2d 36], the court stated that "Although information provided by an anonymous informer is relevant on the issue

of reasonable cause, in the absence of some pressing emergency [citation], an arrest may not be based solely on such information [citations];" that "evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable." It was pointed out that "In some cases the identity of, or past experience with, the informer may provide such evidence [citation], and in others it may be supplied by similar information from other sources or by personal observations of the police [pp. 294, 295]."

The question here presented is whether the information given by Bruce to the officers, coupled with their observation of appellant leaving his living quarters with a brown paper sack in his hand, was sufficient to constitute reasonable cause to believe that appellant was guilty of a felony.

█ It appears that the officers had not previously known Bruce or had any contact with him and that they did not know his reputation or any other fact which would assist in evaluating his reliability. In the absence of any emergency, "an arrest may not be based solely on such information." (*People* v. *Willson, supra.*) Were the observations of the police in this instance sufficient to supply this deficiency? The answer to this question lies in the significance to be attached to the fact that appellant was observed emerging from his living accommodations with a brown paper sack in his right hand. █ It is, of course, a matter of common knowledge that such bags are constantly used by markets, grocery stores, drug stores, and similar commercial enterprises for convenient carrying of merchandise by their customers. Hence, practically every household has a supply of such bags at hand, and the members thereof naturally use them to carry a great variety of items, such, for example, as the children's lunches. This is common practice. And the usual manner of carrying such a bag is in the hand. In fact, there is no other convenient way to carry such a bag in the absence of suitable pockets, and particularly so where the package is too large for available pockets. It is, of course, obvious that marijuana may be carried in a can or other container, and the officer acknowledged that upon occasion this was done. █ It is therefore apparent that no incriminating significance can reasonably be attached to the fact that appellant was carrying a brown paper sack in his right hand. This incident is no more significant than the officer's hearing footsteps that "seemed to be going away from the

door" when he knocked, in *People* v. *Thymiakas,* 140 Cal. App.2d 940 [296 P.2d 4].

The observations of the officers in the Willson case, *supra,* were far more revealing than in the instant matter. There Mona, the defendant, had plain scratch paper in her hand rather than a waitress' order book, and, upon being questioned, attempted to destroy the paper. Here nothing met the officer's gaze except an innocuous paper sack that any person might be carrying. Nor was any attempt made to conceal or dispose of it.

This case, factually, is very similar to Thymiakas, *supra,* where this court held that an unevaluated report from an anonymous informer that a particular person had heroin at his bedside, coupled with the recollection of an officer that he had heard this person mentioned as being a user and peddler of narcotics, plus hearing what appeared to be retreating footsteps when the officers knocked on the door of his apartment, did not constitute reasonable or probable cause for his arrest and the search of his apartment. (See also to the same effect, *People* v. *Schraier,* 141 Cal.App.2d 600 [297 P.2d 81].)

The People suggest that the officers were confronted with a "pressing emergency" (*People* v. *Willson, supra,* p. 294) and were therefore justified in arresting appellant solely on the unevaluated information provided by an anonymous informer. We fail to find any "pressing emergency" in this factual setting. Here appellant was peacefully and quietly emerging from his own threshold. He was met by officers who did not have reasonable or probable cause to believe he was guilty of a felony. This does not create a "pressing emergency" justifying his arrest. (See *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73], cited in *People* v. *Willson, supra.*

It is now settled that a search cannot be justified by what it produces. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528].)

The judgment (order granting probation, Pen. Code, § 1237) is reversed.

Moore, P. J., and Ashburn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 16, 1957. Gibson, C. J., Shenk, J., and Spence, J., were of the opinion that the petition should be granted.