[Crim. No. 3850.   First Dist., Div. One.   Apr. 28, 1961.]

THE PEOPLE, Appellant, v. FRANCIS VEGAZO, JR., Respondent.

Stanley Mosk, Attorney General, Arlo E. Smith and Edward P. O'Brien, Deputy Attorneys General, for Appellant.

Joseph A. Filippelli for Respondent.

TOBRINER, J.—The superior court in this case sustained respondent's motion under Penal Code section 995, to set aside the information charging respondent with possession of marijuana in violation of section 11530 of the Health and Safety Code. The order rested upon the ground that the marijuana offered as evidence had been obtained by an unlawful search and seizure. We believe, however, that the conduct of respondent in the presence of the officers, combined with the prior information in the possession of police, established probable cause for arrest. We think the precedents substantially compel that result. We find no merit in the further position of appellant that ''Since there was no showing that either the arrest or the search and seizure was made without a proper warrant, it is presumed that the arrest was lawful and that therefore the search of defendant's person as an incident thereto was lawful.''

According to Officer Fogarty of the San Francisco Police Department he received a phone call from the Bureau of Inspectors on April 21, 1960, at ''approximately 2:45 a.m.'' to the effect that a woman had called ''leaving a phone number, stating that a man was in her apartment and that he was presently smoking marihuana.'' When Fogarty called that number the woman said she would meet him in front of the apartment house at 825 Geary Street within five or ten minutes. Officer Fogarty and Agent Fahey of the Federal Narcotics Bureau then went to the designated apartment house. A woman giving her name as Betty Madison appeared and repeated that ''. . . a man in her apartment . . . was smoking marihuana cigarettes.'' The three then went up in the elevator to the apartment; the woman told the officers that she would reenter the apartment and that they should ring the bell a few minutes later. The officers followed the suggested procedure, and the woman opened the door.

Officer Fogarty ''observed the defendant seated on a couch or Chesterfield.'' He had a cigarette in his left hand. As the officer entered the room respondent was ''in the process of moving his hand down and rolling it (the cigarette) into a ball . . .'' The officer ''grabbed'' the cigarette. The officer stated that ''when he rolled his hand and I bent over to pick it (the cigarette) up I could smell marihuana.'' The officer then placed defendant under arrest.

In the municipal court respondent moved to dismiss the proceeding on the ground that the prosecution obtained the evidence as a result of an illegal search and seizure; the court

denied the motion and held defendant to answer. As we have stated, the superior court sustained respondent's motion to set aside the information on the basis that the officers obtained the evidence by means of an illegal search and seizure.

We find no merit in appellant's first position that since respondent did not adduce any evidence that the officers proceeded without a warrant we must presume that they possessed a warrant and that their acts were lawful. To accept any such hypothesis would be to presume on appeal error of the trial court. (*People* v. *Farrara* (1956), 46 Cal.2d 265, 268-269 [294 P.2d 21].) The superior court here dismissed the information and impliedly found that the officers proceeded without a warrant and indeed without probable cause. We certainly cannot presume that the officers possessed a warrant.

Nor do appellant's authorities sustain that position. In both of the cited cases, *People* v. *Citrino* (1956), 46 Cal.2d 284 [294 P.2d 32], and *Badillo* v. *Superior Court* (1956), 46 Cal.2d 269 [294 P.2d 23], the trial court gave judgment for the prosecution; hence the presumption ran in favor of the judgment and of the validity of the arrests. Upon that basis the presumption here favored respondent; the burden rested upon the prosecution to show the legality of the arrest.

Turning to the crucial question of the case, we believe that the conduct of respondent in moving his left hand to his side and rolling the cigarette into a ball constituted the kind of furtive and suspicious conduct which, combined with the previous statement by the informer that respondent was smoking a marijuana cigarette in her apartment, justifiably aroused the officers' suspicions, affording them reasonable grounds for belief that respondent participated in the commission of a crime. As we shall point out, we believe the decisions constrain us to reach this conclusion.

No precept predetermines just what kind of conduct on the part of a defendant composes reasonable and probable cause justifying arrest. As Justice White pointed out in *People* v. *Ingle* (1960), 53 Cal.2d 407 [348 P.2d 577], "There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (P. 412.)

A series of cases apply this general standard to situations which involve furtive or suspicious conduct. *Willson* v. *Superior Court* (1956), 46 Cal.2d 291 [294 P.2d 36], is illustrative. There the police, acting on information from an unknown informer that defendant was engaged in a bookmaking operation, entered a cocktail lounge and saw the defendant, a waitress, standing next to the bar. A telephone, a pad of paper and a pencil had been placed on the bar. Defendant held slips of paper in her hand. When the police asked her what these slips were, defendant " '. . . attempted to crumple them, and extended her hand to the back and to the side of her.' " (P. 293.) Stating that information obtained from an anonymous informer cannot serve as the sole basis of arrest, the Supreme Court nevertheless upheld the arrest upon the ground: "Although petitioner's conduct observed by Officer Sunday in the bar would not of itself constitute reasonable cause to believe she was committing a felony, it was sufficient to justify Officer Sunday's reliance on the information given her of petitioner's bookmaking. Under these circumstances the evidence before the magistrate was sufficient to justify the conclusion that a violation of Penal Code, section 337a, had been committed, that Officer Sunday had reasonable cause before the search and seizure to believe that petitioner was guilty thereof, and that therefore the search, seizure, and arrest were lawful. [Citations.]" (Pp. 295-296.)

Other cases similarly define the effect of furtive action such as that of respondent. Thus in *People* v. *Blodgett* (1956), 46 Cal.2d 114 [293 P.2d 57], the officer questioned the occupants of a cab at a late hour of the night, ordered the occupants to get out of the cab, and saw defendant in so doing withdraw his hand from between the seat and the cushion. As to this the court commented, "Since Officer Barker saw defendant's furtive action in getting out, he had reasonable grounds to believe that he was hiding contraband and the search of the cab was therefore reasonable." (P. 117.) Similarly in *People* v. *Amado* (1959), 167 Cal.App.2d 345 [344 P.2d 254], the police, acting on information received from undisclosed informers, approached a house where narcotics were said to be in use; they observed defendant through the screen door; when defendant saw the officers he " 'made a movement toward his pocket and started stepping backwards and put a white piece of paper—looked to me like paper— in his mouth and started walking away from the kitchen.' "

(P. 346.) The court pointed out: "The arrest and the consequent search and seizure were not made solely on information received from the informers. The officers before entering the house observed furtive conduct on the part of defendant, giving them reasonable cause to make the arrest and search. (*People* v. *Cantley,* 163 Cal.App.2d 762 [329 P.2d 993].) When defendant saw the arresting officers approach the back door he made a movement toward his pocket, started stepping backwards, put a piece of white paper in his mouth, and started walking away from the kitchen." (P. 347.)

Likewise in *People* v. *McMurray* (1959), 171 Cal.App.2d 178 [340 P.2d 335], the officers had observed past exchanges of certain objects; when they identified themselves, defendant ran from them, throwing away an object. The court said: "When a person who is approached by an officer engages in furtive conduct the officer may well be justified in apprehending him in view of the officer's prior information and his knowledge of the person's background." (P. 185.) Finally in *People* v. *Pendarvis* (1960), 178 Cal.App.2d 239 [2 Cal. Rptr. 824], the officer, seeing defendant at 12:15 a.m., called out her first name; she turned, looked at the officer, started to cross the street away from the officer and made a motion toward her mouth. As the court points out "[W]hen she then turned and saw the officers and their car, she altered her course and hastily threw into her mouth a white object the size of a bindle of heroin. This gave the officer reasonable cause to believe that a public offense was being committed in his presence. The ensuing arrest and the seizure incident thereto was valid." (P. 241.)

A considerable array of cases decided in the last three years holds that furtive action similar to that set forth, *supra,* satisfies the requirement of reasonable cause in the following instances: *People* v. *Hernandez* (1961), 188 Cal.App.2d 248 [10 Cal.Rptr. 267] [addicts known to administer narcotics in area where defendant was found; eyes dilated; moved hand toward shirt pocket]; *People* v. *Escoto* (1960), 185 Cal.App.2d 599 [8 Cal.Rptr. 488] [when officers identified themselves defendant dropped newspaper from which narcotics paraphernalia fell; defendant moved hand to his mouth]; *People* v. *Hurst* (1960), 183 Cal.App.2d 379 [6 Cal.Rptr. 483] [anonymous call; police saw bag in vent under house as suggested by call; also observed through open window woman emptying object from ashtray into toilet]; *People* v. *Robles* (1960), 183 Cal.App.2d 212 [6 Cal.Rptr. 748] [offi-

cers saw defendant standing in yard; observed scar tissue plus fresh puncture wounds; defendant threw object into next yard]; *People* v. *Williams* (1959), 175 Cal.App.2d 774 [1 Cal.Rptr. 44] [known addicts coming and going from defendant's residence; knock on door; officers heard rush to bathroom]; *People* v. *Poole* (1959), 174 Cal.App.2d 57 [344 P.2d 30] [defendant on parole for narcotics conviction stopped and questioned; movement of hand to his mouth]; *People* v. *Taylor* (1959), 174 Cal.App.2d 448 [344 P.2d 837] [defendant with two users in front of narcotics "hangout" ran through alley into "hangout"; defendant started to put his hand into pocket]; *People* v. *Anders* (1959), 167 Cal. App.2d 65 [333 P.2d 854] [police stopped car weaving back and forth on highway; saw brown package leave right side of car].

We note similar decisions rendered in 1957 and 1958: *People* v. *Cisneros* (1958), 166 Cal.App.2d 100 [332 P.2d 376] [police approached defendant who ran, dropping newspaper containing heroin]; *People* v. *Cantley* (1958), 163 Cal.App. 2d 762 [329 P.2d 993] [robberies in area; could be inferred defendant fitted description of robber; defendant made U-turn at night; officer stopped to question and saw defendant reach under the seat]; *People* v. *Sanson* (1957), 156 Cal.App. 2d 250 [319 P.2d 422] [police saw car driving very slowly with blue taillight and no light on license plate; stopped car to investigate; two passengers hid something under front seat].

Despite the postulate that each case must be determined upon its particular facts and despite the consequent variation in results which the cases portray on the issue of probable cause, the decisions almost uniformly hold that a suspect's definite movements to conceal or destroy the contraband, in the background of prior suspicious circumstances, constitute sufficient probable cause to justify arrest.

We agree with the trial court that the arrest could not properly be solely sanctioned by information supplied by an informant who has not been proven reliable. But the information did not stand alone. The observation by the police of an act that furtively attempted the concealment or destruction of the contraband coalesced with, and in a sense corroborated, the information. We do not see how this sequence of events can successfully be distinguished from the many situations adjudicated by the cases cited above. The in-

formation plus the respondent's conduct form a combination of elements that supplies the ground for probable cause for an arrest.

We reverse the order.

Bray, P. J., and Duniway, J., concurred.

A petition for modification of the decision was denied May 22, 1961.