[Crim. No. 4245. First Dist., Div. One. July 12, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ALBERT
CEDENO, Defendant and Appellant.

John W. Birchall, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Michael J. Phelan, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, J.—After a nonjury trial, defendant was convicted of possession of marijuana, with a prior felony conviction for possession of narcotics, in violation of section 11530 of the Health and Safety Code of the State of Cali-

fornia. The conviction resulted upon the testimony of Police Officer Charles Wettstein, who testified substantially as follows:[1]

That during the month of August 1961 the Narcotics Division of the San Francisco Police Department received a narcotic complaint in which Louise Friend was named as a possible person who would help the narcotic detail in apprehending some narcotic violators in the Sixth and Mission Streets area in San Francisco. During the week of September 16th, Miss Friend came to the police and told them the names of people who had been dealing in forged prescriptions and also that she thought were dealing in marijuana. The police told her to be more definite about the names, and on September 16th Wettstein called her at her hotel, at which time she stated that a fellow she knew by the name of Al and who lived at 80 Ninth Street was dealing in marijuana. That evening the police escorted Miss Friend to 80 Ninth Street, gave her some money, and sent her into the hotel. Approximately five minutes later she came out of the hotel, entered the police vehicle and turned over to Wettstein one marijuana cigarette which she stated she had just gotten in room 24 from the fellow named Al. The police had given her $10 with which to buy the marijuana which she returned to them at that time with the explanation that she could not buy any more than the one cigarette which cost her $1.00. Wettstein then gave her the $1.00.

On the following Monday, September 18th, Miss Friend was again contacted by the police and was asked to make another purchase. She went up to the hotel room but no one answered the door. Upon returning to the police car, Miss Friend identified the driver of a passing car with the statement " 'That's him now. . . .' "[2] Thereafter, and on October 17, 1961, Miss Friend was encountered at Sixth and Mission Streets at 1 o'clock in the morning just as Wettstein was going off duty. She got into the police car and was asked if she had seen "Al" at the hotel in question. She answered that she had been up there that day and that he had marijuana in the room on the table, on the bed and "every place in the room." That evening Wettstein and three other police

---

[1] A police laboratory technician also testified that the vegetable material in question was marijuana and another police officer testified as to certain fingerprints relative to the establishment of the prior offense. This testimony is not challenged on appeal.

[2] Officer Wettstein identified defendant in open court as the man Miss Friend had then pointed out.

officers went up to room 24 in the hotel located at 80 Ninth Street. The officers knocked at the door, which was opened by defendant. Wettstein identified himself as a police officer, whereupon defendant tried to push the door closed. The officers then pushed the door open and went into defendant's room. Defendant asked "what this was all about," and Wettstein informed him that he had information that defendant had marijuana in the room, to which defendant responded "well, if you mean grass, . . . yes, I have, . . . 'What's wrong with it?'" Upon being asked where the marijuana was he pointed to a closet where the substance which was later analyzed as marijuana was located. Other marijuana and marijuana cigarettes (also subsequently so analyzed) were found on a table in the room. Defendant was thereupon arrested. The arrest and search were made without warrants.

Wettstein testified further: that he did not make any other arrests as a result of information received from Louise Friend; that the arrest of defendant was the only arrest made upon information received from Miss Friend; that he had not known Miss Friend prior to the week of September 16th; that she had no narcotics record, but that she had a police record of some kind. When asked by counsel for defendant whether he had received any information from her with respect to narcotics prior to this incident, Wettstein replied "[w]e received information from her prior to this, yes," but nothing more concerning this information was developed by said counsel, except that it was "not about" defendant. When Wettstein was asked the same question by the prosecutor and had answered that at one time they were looking for a certain James Lucas about whom "[w]e had information from other sources that he had pulled a burglary in a downtown department store," an objection on the ground of incompetency, immateriality, and irrelevancy was interposed by counsel for defendant. The following colloquy between the trial court, the witness, and respective counsel, interspersed with some testimony by the witness, ensued.[3] Defendant's

---

[3] "THE COURT: I think he is showing the reliable informer.
"MR. DRESOW: [Counsel for Defendant] Well, not about the burglary. It is not showing a narcotic informer. They are presenting a mass of evidence here about a woman that told him one—I will argue that later. We object to it on the grounds it is incompetent, irrelevant and immaterial.
"THE COURT: Is this information on some other narcotic person?
"THE WITNESS: It is a narcotic addict that we had in mind that

counsel objected to the reliability of Louise Friend during the course of Wettstein's testimony upon a *voir dire* examination of the officer upon the question of such reliability. Again, when the narcotics were offered in evidence after Wettstein's testimony, the admissibility was objected to by defendant on the grounds that they were "the result of an illegal search." An objection to the illegality of the search was again interposed upon the submission of the case for decision. In each instance the trial court ruled adversely to defendant.

### The Reliability of the Informer

Defendant's main contention on appeal is that the informant, Louise Friend, was an unreliable informer, and that therefore the police, acting upon information received from her, did not possess the requisite reasonable and probable cause to justify the search of defendant's premises without a search warrant or his arrest without a warrant of arrest. The basic rule is stated in *People* v. *Torres,* 56 Cal.2d 864 [17 Cal.Rptr. 495, 366 P.2d 823], as follows: "A search without a warrant is proper where it is incident to a lawful arrest based on reasonable cause to believe that the accused has committed a felony. Such a search is not rendered unlawful merely because it precedes rather than follows the

---

had—we had information had pulled a burglary and we were trying to—

"MR. DRESOW: Now, there is the evidence that I am objecting to. Why don't you instruct the witness until you making [*sic*] a ruling not to testify.

"THE COURT: In other words, you object to this search; I am sure if they do not prove that they received this information from a reliable informer——

"MR. DRESOW: That is right, but what I am getting at is——

"THE COURT: Well now, you are objecting because they are trying to show that she was reliable.

"MR. DRESOW: But my argument is this, Your Honor: A reliable narcotic informer is not a reliable narcotic informer because she informs on burglary cases. That is my point.

"MR. SHAW: [The Prosecutor] Any evidence that tends to show her reliability would be admissible, irrespective of whether it is a burglary or——

"THE COURT: Of course, this involves a narcotic addict at least, anyway, this second case. All right, then what did you do?

"MR. SHAW: Q. Did you know this person that she had told you about? A. Yes, I had locked him up previously on narcotic addiction and he was found guilty of this charge.

"MR. DRESOW: We are going to object again. It is irrelevant, incompetent and immaterial. They are looking for a burglary.

"THE COURT: All right, let's get down to this case.

"MR. SHAW: Q. On the evening when you went to Room 24, 80 Ninth Street, San Francisco, what did you do?

"MR. DRESOW: Well now, at this time, Your Honor, may I examine him on the reasonableness of the search before they get into the search?

"THE COURT: Very well."

arrest. [Citations.] ██ Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. The test is not whether the facts on which the officer relies are sufficient to convict, but only whether the person should stand trial. [Citations.]'' (P. 866.) ██ A valid search or arrest may be made solely by reason of information communicated by a *reliable* informant. (*People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36], *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535].) On the other hand, information supplied by an unknown or unreliable informer will not in itself justify an arrest or search without a warrant. (*Ovalle* v. *Superior Court,* 202 Cal.App.2d 760, 763 [21 Cal.Rptr. 385]; *People* v. *Diggs,* 161 Cal.App.2d 167, 171 [326 P.2d 194]; *People* v. *Goodo,* 147 Cal.App.2d 7, 8-9 [304 P.2d 776]; *Willson* v. *Superior Court, supra*; *People* v. *Amos,* 181 Cal.App.2d 506, 508 [5 Cal.Rptr. 451].)

The reliability of the informer goes to the very heart of the concept of reasonable cause. Whether or not a police officer acts upon reasonable cause, where he relies upon information given by an informer, depends, in each instance, upon whether the reliance on the information was reasonable. (See *Willson* v. *Superior Court, supra,* p. 294.) Accordingly, to justify reliance on the information received it is now firmly established in this state that the information must come from a reliable informant. (*People* v. *Prewitt, supra*; *People* v. *Roland,* 183 Cal.App.2d 780, 784 [6 Cal.Rptr. 895]; *People* v. *Amos, supra,* pp. 508-509; *People* v. *Dewson,* 150 Cal.App.2d 119, 128 [310 P.2d 162]; *Ovalle* v. *Superior Court, supra*; *People* v. *Williams,* 196 Cal.App.2d 845, 850 [16 Cal.Rptr. 842]; *People* v. *Bates,* 163 Cal.App.2d 847, 851 [330 P.2d 102].) The informer must be known to the officer to be reliable, and must be a person whom the officer in good faith believes to be trustworthy. (*People* v. *Bates, supra*; *People* v. *Williams, supra*; *People* v. *Rixner,* 157 Cal. App.2d 387, 390-391 [321 P.2d 91].) Accordingly, an arrest and search may be made solely on the basis of information received from *a single reliable informant.* (*People* v. *Roland, supra*; *People* v. *Boyd,* 162 Cal.App.2d 332, 334 [327 P.2d 913].) The essence of this rule of justification for search or arrest without a warrant based upon information from an informer is stated thusly in *People* v. *Bates, supra*: ''In most

cases the informant must not only be known to the officer, but the officer must have had sufficient dealings with the informant to give him reasonable cause to believe that the informant is reliable and that the information given by him is truthful. *It is only in the case of a pressing emergency that an arrest or search without warrants may be justified based upon information secured from an anonymous informant,* or from an informant not known to the officer to be reliable." (P. 851; italics added; citing *Willson* v. *Superior Court, supra*; and see *People* v. *Goodo, supra.*) Again, in *People* v. *Bates, supra,* we find this language: "It is also well settled that in the absence of a pressing emergency, the officer may not properly arrest or search a person based upon information gained from an informant not known to the arresting officer, *or, if known, not known from past experience to have been a source of tested reliable information.*" (P. 851; italics added; citing *People* v. *Dewson, supra.*) ▓▓ This "tested reliable information" has been said in *People* v. *Dewson, supra,* to mean information which in the past has led the police to valid suspects. (See *People* v. *Roland, supra,* p. 784.) It must be pointed out, however, that the reliability of the informant may be shown not only by past experience with the informant, but also may be substantiated by the proven accuracy of the information given by the informant and which the officers from other sources know is accurate. This substantiation may be supplied by substantial corroborative facts known or discovered. (*People* v. *Bates, supra,* p. 852; *Willson* v. *Superior Court, supra,* p. 295; *People* v. *Holguin,* 145 Cal.App.2d 520, 523 [302 P.2d 635]; *People* v. *Maddox,* 46 Cal.2d 301, 304 [294 P.2d 6]; *People* v. *Diggs, supra,* p. 171.)

▓▓ "There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577].) In making this determination the applicable test is: Considering all the information in the hands of the police, would a reasonable police officer act on that information or would a reasonable police officer seek further information before making the arrest and conducting the search? (*People* v. *Diggs, supra,* p. 171.)

▓▓ Moreover, when the question of the legality of an arrest or of a search and seizure is properly and timely raised, the defendant makes a prima facie case when he establishes that

an arrest without warrant or a search without warrant has been made, and the burden then rests upon the prosecution to show that the officers had reasonable cause for the arrest or search. (*People* v. *Haven,* 59 Cal.2d 713, 717 [31 Cal. Rptr. 47, 381 P.2d 927]; *Tompkins* v. *Superior Court,* 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23]; *People* v. *Silvestri,* 150 Cal.App.2d 114, 118 [309 P.2d 871].)

In the present case Louise Friend was not shown to be a reliable informant. Miss Friend first became known to the police in August 1961, and the only information furnished by her which led to a valid suspect was that which led to the arrest of defendant on October 17th. There was no evidence that either Wettstein or any of the police officers involved in the search and arrest in question had any previous experience with Miss Friend, nor was there any showing that she had previously given any information to the police which led to any valid suspects. While the record discloses that the prosecution at one stage of the proceedings attempted to show that Miss Friend has given Officer Wettstein information relative to one James Lucas who was being investigated on a burglary charge, the inquiry was abandoned after merely showing that Miss Friend knew Lucas and that she gave some information regarding him to the police. The character of the information, whether it was acted upon or whether it resulted in the arrest of Lucas, was not sufficiently revealed to permit evaluation. While it is true that defendant's counsel attempted to block the inquiry concerning the Lucas matter by objections, these were overruled by the trial court. The prosecution, therefore, was not prevented from establishing that Miss Friend was a reliable informer based upon the Lucas incident. Accordingly, the rule announced in *Ovalle* v. *Superior Court, supra,* 202 Cal. App.2d 760, that an accused who objects to the introduction of hearsay testimony that may establish that there was probable cause for his arrest may not successfully and simultaneously complain of the alleged lack of such cause, is not applicable. (See *People* v. *Boyles, supra,* 45 Cal.2d 652, 656.)

The People contend that Miss Friend's reliability is established because her information was sufficiently corroborated to establish reasonable cause to justify the search of defendant's premises and his arrest. They assert these corroborative facts consist of the following: (1) the occur-

rence on September 16th when Miss Friend went into the hotel at 80 Ninth Street and came out five minutes later and handed to police one marijuana cigarette which she stated she had purchased from a person named "Al" for $1.00; (2) the subsequent pointing out to the police on September 18th of the person she identified as "Al"; and (3) the statement by the said informant on the morning of the arrest that there was marijuana in defendant's room. None of these items amount to substantial corroborative facts known or discovered by the police themselves, but constitute additional information received from the informant.[4] As Justice Tobriner pointed out in *Ovalle* v. *Superior Court, supra*: "The quantification of the information does not necessarily improve its quality; the information does not rise above its doubtful source because there is more of it." (P. 763.) None of these alleged corroborative circumstances result from information received by the police from other sources or from their own investigation, but they emanate solely from the lips of the informant. Accordingly, the source of the information being unreliable, the fact that it is of more elaborate nature or of a different kind does not clothe it with the indicia of reliability. All that the information in the present case amounts to is that the informer told the police no more than that she knew a person by the name of Al at the hotel located at 80 Ninth Street; that she obtained one marijuana cigarette from him; and that he had a quantity of marijuana in his room. In the light of the above rules this information was not enough to justify a search or an arrest without a warrant. As stated in *People* v. *Amos, supra,* 181 Cal.App. 2d 506, such information "simply serves to point the finger of suspicion at a particular person and ordinarily results in surveillance or investigation of the suspect. If the investigation or observation of the suspect tends to confirm the report of the informant whose reliability has not been established a lawful search or arrest may be made provided the combined information gives reasonable cause therefor." (P. 508; citing *Willson* v. *Superior Court, supra,* p. 295.) In *Amos* the informer told the police that he had purchased marijuana from one Henry Amos at a given address. The defendant was observed leaving the address in question and prior to the search he admitted that his name was Henry Amos. These latter circumstances were held not to be cor-

---

[4] Corroborative evidence is defined in Code Civ. Proc., § 1839, as: "[A]dditional evidence of a different character, to the same point."

roborative of the information given. In the present case we have the additional information that the person identified as Al had marijuana in his room and that the cigarette handed to the police was obtained from Al at the latter's address. The circumstance that the cigarette was handed to the police after Miss Friend came out of the hotel at said address adds nothing to the informer's reliability. There was no showing that she did not have the cigarette on her person when she entered the premises nor that she could not have obtained it from a source other than defendant while on the hotel premises. The only indication of the source of the marijuana was her own statement. In the instant case all that the officers had observed, prior to the time they knocked at defendant's door, was the driving of an automobile by defendant in the vicinity of the hotel where the informant said he lived. Needless to say, the driving of an automobile in a lawful manner is not conduct sufficient to create probable cause for a lawful arrest. There is no showing, other than the information received from the informant, that the officers knew that defendant occupied room 24 of the hotel in question. This fact was ascertained by them for the first time when they knocked at the door and it was opened by defendant. The fact of such occupancy did not tend to indicate the presence of marijuana, nor did it tend to show that defendant was the source of the one marijuana cigarette. It only showed that Miss Friend knew that defendant lived at that address. The occupancy of said premises did not give reliability to the statement of the unreliable informer that defendant had contraband therein justifying a search. (See *People* v. *Amos, supra,* p. 509.) Up to and including the time defendant opened the door the officers observed no act or conduct on his part that tended to indicate he was violating the law. All of his prior conduct observed by the police consisted of innocent actions that any law-abiding citizen should be able to engage in without fear of search or arrest. Accordingly, as of the moment when the door was opened there was a total absence of substantial facts tending to corroborate the information of the informant that defendant possessed marijuana. (See *People* v. *Goodo, supra,* 147 Cal.App.2d 7, 9-10; *People* v. *Harvey,* 142 Cal.App.2d 728, 731 [299 P.2d 310].) We now turn to the circumstance attendant to defendant's attempt to close the door after Wettstein had identified himself as a police officer. Our inquiry is directed to whether, as stated by Justice Tobriner in *People*

v. *Vegazo,* 191 Cal.App.2d 666 [13 Cal.Rptr. 22], this act "coalesced with, and in a sense corroborated, the information." (P. 671.)

### Corroboration by Furtive or Suspicious Conduct

In *People* v. *Vegazo, supra,* the appellate court cited and reviewed a number of recent cases in California where it was held that furtive or suspicious conduct satisfied the requirement of reasonable cause justifying arrest without a warrant. (See *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57] (officers questioned occupants of cab at late hour of night and saw the defendant withdraw hand from between seat and cushion) ; *People* v. *Hernandez,* 188 Cal.App.2d 248 [10 Cal.Rptr. 267] (the defendant, who was found in an area where addicts were known to administer narcotics, with eyes dilated, moved his hand toward his shirt pocket) ; *People* v. *Escoto,* 185 Cal.App.2d 599 [8 Cal.Rptr. 488] (when officers identified themselves the defendant dropped newspaper from which narcotics paraphernalia fell and the defendant moved his hand to his mouth) ; *People* v. *Robles,* 183 Cal.App.2d 212 [6 Cal.Rptr. 748] (officers saw the defendant standing in yard, observed scar tissue plus fresh puncture wounds, and the defendant threw object in next yard) ; *People* v. *Williams,* 175 Cal.App.2d 774 [1 Cal.Rptr. 44] (known addicts coming and going from the defendant's residence; knock on door; officers heard rush to bathroom) ; *People* v. *Poole,* 174 Cal. App.2d 57 [344 P.2d 30] (the defendant on parole for narcotics conviction stopped and questioned made a movement of his hand to his mouth) ; *People* v. *Taylor,* 174 Cal.App.2d 448 [344 P.2d 837] (the defendant with two users in front of narcotics "hangout" ran through alley into "hangout" and started to put his hand in pocket) ; *People* v. *Anders,* 167 Cal.App.2d 65 [333 P.2d 854] (police stopped car weaving back and forth on highway and saw a brown package leave right side of car) ; *People* v. *Cisneros,* 166 Cal.App.2d 100 [332 P.2d 376] (police approached the defendant who ran, dropping newspaper containing heroin) ; *People* v. *Cantley,* 163 Cal.App.2d 762 [329 P.2d 993] (the defendant made U-turn at night in area where robberies had been committed; the defendant fitted description of robber; officer stopped to question and saw the defendant reach under seat) ; *People* v. *Sanson,* 156 Cal.App.2d 250 [319 P.2d 422] (police saw car driving very slowly with no light on license plate; stopped car to investigate; two passengers hid something under front seat) ; *People* v. *McMurray,* 171 Cal.App.2d 178 [340 P.2d

335] (officers had observed past exchanges of objects; when they identified themselves, the defendant ran from them throwing away an object) ; *People* v. *Pendarvis*, 178 Cal.App. 2d 239 [2 Cal.Rptr. 824] (officer, seeing the defendant at 12:15 a.m. called her by first name; the defendant turned, looked at officer, started to cross street away from the officer and made a motion toward her mouth).)

The reviewing court, in *Vegazo*, reasoned that if, as held by the foregoing decisions, definite movements to conceal or destroy contraband, in the background of prior suspicious circumstances, constituted sufficient probable cause to justify arrest, information supplied by an unreliable informer plus the defendant's conduct in furtively attempting to conceal or destroy contraband should likewise be deemed sufficient to form a combination of elements that supplies the ground for probable cause for an arrest.

In *Vegazo* the officers had received a previous statement by an informer that the defendant was smoking a marijuana cigarette in the informant's apartment. When the police officers were admitted to the apartment they saw the defendant move his left hand to his side and roll a cigarette into a ball. It was there held that the information, plus the observation by the police of this furtive attempt to conceal or destroy the cigarette, constituted sufficient probable cause to justify the arrest. *Vegazo* also takes note of *Willson* v. *Superior Court, supra,* 46 Cal.2d 291; *People* v. *Amado,* 167 Cal.App.2d 345, 347 [334 P.2d 254] ; and *People* v. *Hurst,* 183 Cal.App.2d 379 [6 Cal.Rptr. 483]. In *Willson* the police, acting on information from an unknown informer that the defendant was engaged in a bookmaking operation, entered a cocktail lounge and saw the defendant, a waitress, standing next to the bar with slips of paper in her hand. A telephone, a pad of paper and a pencil were on the bar. When the police asked her what these slips were the defendant attempted to crumple them, and extended her hand to her side and back. This conduct was held sufficient to justify the officers' reliance on the information received from the informer of the defendant's bookmaking and thus to warrant a search and arrest without a warrant. Similarly, in *Amado,* the police, acting on information from undisclosed informers approached a house where narcotics were said to be in use. They observed the defendant through a screen door. When the defendant saw the officers he made a movement toward his pocket, stepped backwards, and put in his mouth

what appeared to the police officer to be a white piece of paper. The court there pointed out that the information together with the furtive conduct on the part of the defendant gave the police officers reasonable cause to make the arrest and search. Likewise, in *Hurst,* the police received an anonymous telephone call that if they wanted to find a quantity of marijuana to look under a house at a certain address. The police saw a bag in a vent under the house as suggested by the call. The occupant of the house was observed by the police through an open window. One of the officers went to the front door and knocked three times, with waiting periods between knocks. While the officer was knocking at the door another officer observed the said occupant emptying an object from an ashtray into the toilet. It was there held that the observations of the officers were sufficient to justify reliance on the information given by the unidentified informer and that the circumstances were such that they had reasonable cause, before the search and arrest, to believe that the occupant of the house was guilty of unlawfully possessing narcotics.

 It is apparent that the California cases clearly hold that information supplied by an informant who has not proven reliable may, when coupled with a defendant's furtive or suspicious conduct, form a combination of elements that supplies the grounds for probable cause for a search or arrest without a warrant. Do we have such conduct here? Or, to be specific, does the act of defendant in pushing the door closed constitute such conduct? At first blush it would appear that there is an aura of suspicion attached to a person's closing a door in the face of police officers who have identified themselves as such. A closer scrutiny, however, compels the conclusion that such conduct is a circumstance concomitant to and contemporaneous with the entry.

 It is not unreasonable for police officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855].) But the right to seek interviews with suspects or witnesses at their homes does not, in the absence of a search warrant or warrant of arrest, or in the absence of reasonable or probable cause for such search or arrest, include the right to walk in uninvited or to enter such home without the suspect's consent. (*People* v. *Haven, supra,* 59 Cal.2d

713, 717-718; *Castaneda* v. *Superior Court,* 59 Cal.2d 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641].) In the case at bench no contention is made by the People that there was a valid consent to the entry. It is abundantly plain that defendant did not freely and voluntarily consent to the search of his apartment. His effort in pushing the door closed is a clear indication that he did not wish the officers to enter or to search his room. In the absence of a warrant or probable cause for such a search, defendant had a right to forcibly resist an officer's assertion of authority to enter his home or search it or his person. (See *People* v. *Haven, supra; Castaneda* v. *Superior Court, supra.*) Defendant was under no duty to assist the officers in securing evidence against him. As stated in *Castaneda*: "Since the search was not incident to his arrest, he had the right to have a magistrate determine whether there was reasonable cause to search his home and whether a search warrant should therefore issue. [Citations.]" (P. 443.) " ' Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.' " (*People* v. *Tarantino,* 45 Cal.2d 590, 594 [290 P.2d 505] ; quoting *McDonald* v. *United States,* 335 U.S. 451, 455 [69 S.Ct. 191, 93 L.Ed. 153].)

In the instant case the officers gained entry by pushing the door open against defendant's opposing force. The entry was therefore unlawful. Accordingly, the search, the resulting discovery of marijuana and the arrest were all the products of the officers' unlawful entry. Nor can any inference of consent after the entry be drawn. "A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest, however, is inextricably bound up with the illegal conduct and cannot be segregated therefrom." (*People* v. *Haven, supra,* p. 719.) It is well established, of course, that a search cannot be justified by what it turns up. (*People* v. *Brown,* 45 Cal.2d 640, 643-645 [290 P.2d 528] ; *Tompkins* v. *Superior Court, supra,* 59 Cal.2d 65, 68; *People* v. *Haven, supra.*) Moreover, the search could not be justified as incidental to the

arrest because defendant was not arrested until the marijuana was found in his hotel room.

In *Tompkins* v. *Superior Court, supra,* the officers arrested one Nieman for possession of marijuana. The officers learned that Nieman had two telephone listings, one at a Folsom Street address and another at 700 Shotwell Street. The latter was also listed in Tompkins' name. Nieman first denied living at the Shotwell Street address, but then stated that he did live there in apartment No. 3. He denied that there was any contraband there and gave the officers his keys so that they could confirm his statement for themselves. Without a search warrant or warrant of arrest Officer Martin went to the Shotwell Street apartment. While he was attempting to open the door with the wrong key, Tompkins opened the door on the chain. Martin identified himself as a police officer. Tompkins looked, made a motion with his arm to the left and slammed the door shut. The officer kicked the door in and found Tompkins in the middle of the room. A search disclosed the presence of marijuana and Tompkins was arrested. In holding that the consent of one joint occupant does not justify entering and searching over the objection of another joint occupant present on the premises at the time, the Supreme Court declared that there was no evidence that the possession of contraband, if any, by Nieman at said address was shared by Tompkins, and that accordingly Tompkins' apparent motioning of someone away from the door and closing it in the officer's face did not provide the missing elements of reasonable cause to believe that Tompkins was guilty of a felony. The court made this significant statement: "There are many reasons other than guilt of a felony why an occupant of an apartment may not wish himself or others present exposed to the immediate view of a stranger, even if the stranger is a police officer. If refusal of permission to enter could convert mere suspicion of crime into probable cause to arrest the occupant and search his home, such suspicion alone would become the test of the right to enter, and the right to be free from unreasonable police intrusions would be vitiated by its mere assertion." (P. 68.)

Likewise, in *People* v. *O'Neill,* 187 Cal.App.2d 732 [10 Cal. Rptr. 114], a police officer who had no knowledge of the reliability of the informant who stated that a tall, dark-complexioned man with a moustache named Gato and his brother, who had moved into an apartment house at a given address, were users of narcotics and were possibly in posses-

sion of narcotics, it was held that *such information and the fact that the defendant slammed the door in the officer's face* when officers accosted him as he was leaving his apartment did not show probable cause for the arrest and the search of the apartment so as to justify a forcible entry without a warrant. Similarly, in *People* v. *Thymiakas,* 140 Cal.App.2d 940 [296 P.2d 4], it was held that an unevaluated report from an anonymous informer that a particular person had heroin at his bedside, coupled with the recollection of an officer that he had heard this person mentioned as being a user and peddler of narcotics, plus hearing what appeared to be retreating footsteps when the officers knocked on the door of his apartment did not constitute reasonable or probable cause for his arrest and the search of his apartment. (See also *People* v. *Schraier,* 141 Cal.App.2d 600 [297 P.2d 81].)

The People rely upon *People* v. *Lawton,* 186 Cal.App.2d 834 [9 Cal.Rptr. 122]. The factual situation there is not only distinguishable from *Tompkins* and *O'Neill,* but it was such as to warrant the conclusion that at the time of the entry into the defendant's apartment the officers had reasonable cause for the defendant's arrest and subsequent search of the apartment. There, two informers and a narcotic user told the police that a person known as Cadillac Willie or Black Willie was selling or dealing in narcotics in large amounts in a certain locality. The officers checked the area and saw a blue Cadillac automobile bearing a certain license number parked in front of a certain building. They checked with other police officers and were told that Cadillac Willie or Black Willie was William Lawton (the defendant). They also checked the police record of said person and found he had a narcotic record. They also observed him driving the aforesaid Cadillac in the said general area and observed him talking to two known narcotic users. They were also given his address by an unidentified informer. The officers went to the address, an apartment house, where they observed Lawton standing in the entrance. As Lawton was about to enter his apartment an officer approached him and identified himself as a police officer. Lawton pushed the door open, slammed it shut and locked it. The officers forced the door, entered the apartment, placed Lawton under arrest, and then proceeded to search the apartment where they found some heroin in the bathroom. The reviewing court held that the evidence was enough to arouse in the minds of the officers a suspicion

founded on circumstances sufficiently strong to warrant a reasonable man in the belief that the defendant was in possession of narcotics. The corroborating circumstance was not the slamming of the door, but the conduct and investigation preceding it. At the time the door was slammed the officers already knew or had discovered substantial corroborative facts from sources other than the informers that would lead them to believe and entertain a strong suspicion that the defendant was in possession of or dealing in narcotics.

## Was There a Pressing Emergency?

The factual setting in the instant case does not give rise to a "pressing emergency" so as to bring into play the exception that where such emergency exists information from an unreliable informer may justify a search or arrest without a warrant. The record discloses that Officer Wettstein did not consider the arrest or search a matter of pressing emergency, because, upon receiving the information that Al had sold Miss Friend a marijuana cigarette he allowed approximately one month to elapse before he did anything more on the case. Moreover, when, a month later, he was informed by Miss Friend that defendant had a substantial quantity of marijuana in his room, Wettstein went "off duty" and did not do anything until 16 hours later when he made the arrest and search in question.

Having concluded that the search and arrest in the present case were all the products of the officers' unlawful entry and therefore cannot be relied upon to sustain the judgment, we need not discuss the other items of error claimed by defendant-appellant.

The judgment is reversed.

Bray, P. J., and Sullivan, J., concurred.