[Crim. No. 9977.   Second Dist., Div. Four.   Nov. 18, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. EDWARD LOUIS LANDRY, Defendant and Respondent.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Wilber A. Sweeters, Deputy District Attorneys, for Plaintiff and Appellant.

Erling J. Hovden, Public Defender, Edward J. Carney and James L. McCormick, Deputy Public Defenders, for Defendant and Respondent.

BURKE, P. J.—Defendant was charged by information with the crime of possession of marijuana, a felony. (Health & Saf. Code, § 11530.) A preliminary hearing was had and defendant held to answer. The public defender made a motion in his behalf to set aside the information under Penal Code section 995 upon the ground of lack of probable cause for the entry and search of defendant's apartment and the seizure of the incriminating evidence. The motion was granted and the People appeal from such order.

Evidence was presented at the preliminary hearing that on January 18, 1964, two experienced uniformed policemen were patrolling an area known to have a heavy concentration of prostitutes. At about 7:30 p.m. they saw a young girl, 17 years of age, walking alone on the street, and asked her for identification and her purpose. She had no identification with her but took the officers to her nearby residence where they learned her name and age. While there they checked with the police department and found that she had been arrested several times, three times for narcotics. Her eyes were checked and showed normal reaction. She was returned to the place of pickup. She was neatly and cleanly dressed at the time.

At 12:45 a.m. that night the officers saw her standing in an extremely disheveled condition, her hair hanging down in her face, her coat and blouse open, her hose hanging loosely with holes at both knees. Her demeanor was confused, her step unsteady and her speech slurred. A woman, who identified herself as the girl's mother, approached the group and remained with the officers.

There was no odor of alcohol about the girl to explain her condition. By flashlight examination her eyes and pupils failed to react normally; this was demonstrated by similar use of the flashlight on the eyes of one of the officers. Both officers had made numerous arrests of persons under the influence of narcotics, had received special training in the field, and they formed the opinion that she was under the influence of a narcotic. They arrested her for curfew violation. She denied she had been smoking marijuana and when asked where she had been she stated she had been upstairs, at the place where she had been standing, visiting a friend and to

verify this she volunteered to take the officers to her friend's apartment where she said she had spent the evening. The girl, her mother and the officers went to apartment 6; the officers stood to one side while the girl knocked on the door. It was opened slightly, then a chain was released and the defendant opened the door and stepped out. He then saw the uniformed officers, said "Jesus Christ, the fucking cops!," turned and dashed back into the room, leaving the door open. The officers followed. Believing the girl had obtained narcotics in the apartment, one of the officers surmised immediately that defendant was rushing back in the apartment to destroy narcotics. The other officer simply followed his partner.

The first officer testified that a common way of disposing of narcotics is to flush them down the toilet. The defendant in this case ran into the bathroom and took a cardboard box top from the top of the toilet. He opened the bathroom window and threw it out the window. The officer, having observed defendant's action, looked out the window and saw that the box had landed on an outside ledge. He picked up the box top, examined it and found that it contained a marijuana cigarette and a portion of a green leafy substance that resembled marijuana. The officers then searched the apartment and found a paper bag under a couch containing some additional green leafy substance. The officers then arrested defendant.

During the time that one of the officers was making the search the other officer had a conversation with defendant in which the defendant made certain statements freely and voluntarily. When asked where he had obtained the marijuana, he told the officer he had bought four bags of marijuana for $12; that he did not know the seller's name; that he had then left. When asked if he smoked marijuana he stated that he did but not very much, sometimes a half cigarette or maybe one or two cigarettes a day; that he had been using marijuana for approximately three years but that he wasn't "hooked on it" and just did it for enjoyment; that he did not sell any and merely bought the four sacks for his own use.

In *Tompkins* v. *Superior Court*, 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113], the court said: "Petitioner made a prima facie case that his arrest and the search and seizure were illegal when he established that they were made without a warrant. The burden then rested on the prosecution to show proper justification. (*Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23], and cases cited.)"

The officers had no warrant either to arrest defendant or

to search him or his premises. ■ However, a search without a warrant is proper when it is incident to a lawful arrest. (*People* v. *Torres*, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823].) ■ But an informant must be reliable, or tested, to provide reasonable cause (*People* v. *Cedeno*, 218 Cal.App.2d 213, 220 [32 Cal.Rptr. 246]), and, the girl in the case here, denying use of narcotics, the other evidence, consisting of her disheveled appearance and physical condition, only "pointed the finger of suspicion at the defendant."

The committing magistrate found that the officers had probable cause to believe that a felony had been committed in the apartment in question, and we believe justifiably so. ■ In *People* v. *Wilson*, 183 Cal.App.2d 149, 152 [6 Cal. Rptr. 872], the court stated: "[o]n a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant participated. Proof of guilt need not be demonstrated. ■ The court may not substitute its judgment as to the weight of the evidence for that of the magistrate. When testing the sufficiency of the showing, a court may not weigh the evidence, resolve conflicts or judge the credibility of witnesses. If there is some evidence to support the information, the court will not inquire into its sufficiency. ■ Under section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed. [Citations.]"

■ It is recognized that the corroboration of information from an untested informant, which is necessary to supply probable cause for an arrest or search without a warrant, must come from someone or something other than the informant. ■ However, if the further investigation or observation of the officers supplies the confirmation of the information obtained from such an informant, a lawful arrest or search may be made, provided the combined information gives reasonable cause therefor. (*People* v. *Amos*, 181 Cal.App.2d 506, 508 [5 Cal.Rptr. 451].) Thus, the occurrences at the door of defendant's apartment become crucial on the issue of probable cause. Had the defendant merely opened the door, ob-

served the officers and slammed the door shut, it might well be contended that probable cause for entry was still lacking and that a forcible entry would have been unjustified. (*Tompkins* v. *Superior Court, supra*, 59 Cal.2d 65, 67; *Lewis* v. *Superior Court*, 226 Cal.App.2d 102, 104 [37 Cal.Rptr. 773]; *People* v. *Cedeno, supra*, 218 Cal.App.2d 213.) From the obscene remark, its intonation, and the reference to the officers, after defendant had stepped out into the open doorway, it was made quite apparent that he saw the officers and wanted no transactions with them; had he simply so indicated and shut the door, a forcible entry would not have been justified under the cases cited above. As stated by the court in *Tompkins* v. *Superior Court, supra*, 59 Cal.2d 65, 68: "There are many reasons other than guilt of a felony why an occupant of an apartment may not wish himself or others present exposed to the immediate view of a stranger, even if the stranger is a police officer. If refusal of permission to enter could convert mere suspicion of crime into probable cause to arrest the occupant and search his home, such suspicion alone would become the test of the right to enter, and the right to be free from unreasonable police intrusions would be vitiated by its mere assertion. Although hindsight indicates that petitioner's motive in closing the door was to conceal evidence of guilt, Inspector Martin had no reasonable cause so to believe until he kicked the door open. ■ It is settled, however, that a search cannot be justified by what it turns up. (*People* v. *Brown*, 45 Cal.2d 640, 643-645 [290 P.2d 528], and cases cited.)"

■ In the case before this court, however, defendant's furtive actions in rushing back into the apartment, coupled with his derogatory remarks about the police, implied guilt of some sort to one of the police officers; the girl's information that she had spent the evening in the apartment and the officer's belief that she had secured narcotics there combined to provide substantial corroboration to justify the officer's conclusion that defendant was rushing back into the apartment for the purpose of disposing of any narcotics that might remain. With these thoughts in mind it was reasonable for the officer to enter the apartment. In fact, we concur in the view of the committing magistrate that to have acted differently would have constituted a clear dereliction of duty. *People* v. *Vegazo*, 191 Cal.App.2d 666, 671-672 [13 Cal.Rptr. 22], reviews a number of cases wherein the appellate courts have held that actions of a defendant may adequately corroborate information provided by untested informants, and holds:

"Despite the postulate that each case must be determined upon its particular facts and despite the consequent variation in results which the cases portray on the issue of probable cause, the decisions almost uniformly hold that a suspect's definite movements to conceal or destroy the contraband, in the background of prior suspicious circumstances, constitute sufficient probable cause to justify arrest.

"We agree with the trial court that the arrest could not properly be solely sanctioned by information supplied by an informant who has not been proven reliable. But the information did not stand alone. The observation by the police of an act that furtively attempted the concealment or destruction of the contraband coalesced with, and in a sense corroborated, the information. We do not see how this sequence of events can successfully be distinguished from the many situations adjudicated by the cases cited above. The information plus the respondent's conduct form a combination of elements that supplies the ground for probable cause for an arrest."

In the recent case of *People* v. *Edmundson,* 222 Cal.App.2d 781 [35 Cal.Rptr. 598], an officer, having information insufficient to provide probable cause, knocked on the apartment door of a defendant in the course of investigation. The defendant opened the door, and when the officer identified himself, she screamed and ran back into the apartment. The court held these circumstances sufficiently strong to warrant a reasonable man's belief that she was then in possession of narcotics.

In the instant case, the exclamation of the defendant, and his running back into the apartment, was furtive conduct and, coupled with the other facts known to the officers, justified a belief that contraband was contained in the apartment which defendant was hastening to conceal or destroy. This constituted sufficient evidence to support the order of the committing magistrate holding defendant to answer in the superior court.

The order dismissing the information is reversed.

Jefferson, J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 13, 1965. Mosk, J., and Burke, J., did not participate therein.